**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Joseph W. HART and J. Carl Russell,**
**Defendants-Appellants.**

**No. 14955.**

United States Court of Appeals
Sixth Circuit.

Jan. 15, 1963.

Fyke Farmer, Nashville, Tenn., for appellants.

Carrol D. Kilgore, Asst. U. S. Atty., Nashville, Tenn. (Kenneth Harwell, U. S. Atty., Nashville, Tenn., on the brief), for appellee.

Before CECIL, Chief Judge, MILLER, Circuit Judge, and BOYD, District Judge.

BOYD, District Judge.

The government sued the defendants-appellants herein for $83,900.63 plus interest, the balance allegedly owing on a loan contracted with two certain banking institutions, the payment of which the appellants had unconditionally guaranteed. The claim herein against the appellants had been assigned by the aforesaid banks to the government after the latter had paid on its own guaranty of 90% of the obligation. The government's guaranty was executed pursuant to Executive Order 9112, U.S.Code Cong. Service 1942, p. 268, issued under authority of the First War Powers Act of 1941. The only issue found to be deserving of discussion on this appeal is whether in this non-jury case the District Court erred in relying on certain evidence concerning proof of value of real property in rendering judgment against the appellants. The issue arises as incidental to the main question of whether the sale of said real property by the government's assignors, the banks, was a good faith transaction.

In 1942 the appellants herein formed a company known as Country Club Village Corporation for the purpose of undertaking construction of a residential subdivision in Mobile, Alabama, which city was in need of housing due to the impact of the World War II defense effort. Loans for financing the project were procured by the corporation from the First National Bank of Birmingham, Alabama, and Merchants National Bank of Mobile. In 1943 the loans amounted to $2,200,000.00 Notes for this amount were as indicated unconditionally guaranteed by the appellants individually, they being the owners of all but one share of the corporate stock. The stock was pledged as security on the notes and certain mortgages on the properties herein were also given as security. The government's guaranty was given to the banks because the housing was considered necessary to the war effort as contemplated by the executive order aforesaid.

The corporation defaulted on the demand notes herein, whereupon the banks might have foreclosed on the mortgages and stock and also might have obtained judgment against the appellants as guar-

 **129**

antors. However, in lieu of such action the appellants were given the opportunity to transfer and by written agreement of April 6, 1944, did transfer all of their interest in the corporate stock to the banks. Two purposes were apparently thereby served. Firstly, the banks were given a freer hand in the orderly liquidation of the properties without undue title complications toward reduction of the indebtedness (to achieve this end the banks with the assent of the government also lifted the mortgages on the properties) and secondly, forbearance from compulsory foreclosure by the banks was effected. The transfer of title to the stock was not as "further security" for the loan herein, since in the agreement aforesaid the Country Club Village Corporation was admittedly insolvent. For whatever purpose they desired it, however, the appellants were given the privilege of redeeming the stock within one year. The banks by this agreement were given authority to dispose of the stock of the corporation or any successor corporation holding title to the properties in question, but for the period of one year the consent of the appellants was required for such. This procedure was all clearly to the benefit of the appellants. They voluntarily agreed to and had full knowledge of the terms and conditions of the agreement herein.

Upon expiration of the one year redemption period the obligations herein were still unsatisfied and all the properties were sold by the banks with the approval of the government to Spring Hill Homes, Inc. for $37,170.00. Spring Hill by piecemeal sales of this property finally realized a profit of approximately $375,000.00. Meanwhile the banks had made demand on the government for and obtained payment on the government's guaranty, the latter receiving assignment of the claim against the appellants on their guaranties. The appellants resist the government's claim and aver as one defense that they were released from their guaranty obligations because the sale of the properties to Spring Hill was not a bona fide sale. The appellants allege that the properties were sold drastically below their actual values, manifesting bad faith on the part of the banks which consummated the sale with the assent of the government. Toward proving these allegations, the appellants point to two factors—the handsome profit realized by Spring Hill and the appraisal by the Federal Housing Authority made over a year prior to the sale, which appraisal was vastly higher than the price herein realized.

The appellants also assert that bad faith was shown in the sale of these properties by the banks, in that friends of the appellants, were denied the opportunity to purchase the properties involved. Depositions of two such interested parties which appellants introduced reflected that the prices they offered for the properties were not substantially disproportionate to the price at which the properties were finally sold to Spring Hill. This evidence constituted the only other evidence bearing on the value of the properties, although not introduced for such purpose. One witness testified that he offered $40,000.00 for the properties. Another offered $50,000.00 for them, but, significantly, no cash price as such was contemplated by this offer. The latter offer was for a "management" contract, whereby $50,000.00 would have been the sale price to this witness if the properties produced such amount under his sales management.

The gist of the testimony in the depositions introduced by appellants was undeniably to the effect that the real estate market in Mobile at the time of the sale herein was unstable at best, split between devout optimists and positive pessimists. The cessation of the war effort cast grave doubt on the further need for the number of homes required during declared hostilities. One of appellants' witnesses testified by deposition that his banker had urged him not to invest in some 42 other houses for $10,000.00 during this period, the banker estimating that after the war they would not bring "ten cents a dozen." This witness, however, ignored the advice of the banker and made a large profit

from sales of such houses during the inflationary period following the war.

■ The District Court relied heavily on the testimony of these witnesses in finding that the sale price was fair and equitable and that no bad faith in the sale was manifested. This reliance is charged as reversible error by the appellants. While mere offers for the purchase of realty are normally considered of little relevance and probative worth on the question of valuation and thus incompetent as evidence thereof, we cannot agree that the court's reliance on this evidence under these circumstances was reversible error. On the contrary, the circumstances disclose the evidence to be quite competent. It, for one thing, sheds considerable light on the tenor of the market at the time of the sale herein, thus on the value of the properties themselves—all for the purpose of determining the issue of good faith. The valuation statements of the witnesses herein were subject to challenge by cross-examination. The testimony was that of the offerors themselves under oath, and not that of the offerees. The testimony was not tendered primarily for valuation purposes, negativing any apparent motive for fabrication. To say that the trial judge should have ignored this material evidence concerning valuation as bearing on the good faith issues after appellants themselves injected it into the record is clearly unreasonable. The testimony was not subject to the objections usually made to testimony of unaccepted offers as proof of value, as enumerated in Sharp v. United States, 191 U.S. 341, 24 S.Ct. 114, 48 L.Ed. 211. When such evidence is not subject to these criticisms and appears reliable, reliance on such by the District Court cannot be deemed error. See Erceg v. Fairbanks Exploration Company, 95 F.2d 850 at pages 853–854 (C.A.9) 1938, cert. denied 305 U.S. 615, 59 S.Ct. 74, 83 L.Ed. 392. One of the criticisms

to be noted in Sharp, supra, is that mere offers are often lightly made and not intended to be accepted. The offer of $40,000.00 herein was withdrawn after extensive serious consideration and "loss of sleep." The $50,000.00 offer was apparently tentatively accepted on behalf of the banks, but the contract was never formalized because the Spring Hill cash offer, subsequently made, was clearly more advantageous to all concerned. These offers hardly appear to have been lightly made.

The lower court found that the profit made by Spring Hill was explainable, attributing the profit realization to business acumen, the price trends following the war, and Mobile's phenomenal growth. The variance between the Federal Housing Authority appraisal and the sale price obviously was considered met by the testimony of business men who were willing to deal in the realty at the time in question in the Mobile locale.

■■ The government's certificate of indebtedness of the appellants herein which was not questioned was prima facie evidence of the balance of such debt owing by the appellant. We detect no reversible error in the District Court's finding that this evidence was not satisfactorily rebutted through the appellants' claim of bad faith dealings on the part of the banks with the government's assent, the testimony of the appellants' own witnesses having detracted materially from their claim that the price at which these properties were sold was unfair and inequitable. Moreover, the defense of bad faith was an "avoidance" within Rule 8(c) Federal Rules of Civil Procedure, Title 28, U.S.C.A., and the defendant did not carry the burden of substantially proving this defense.

Other questions raised by appellants are considered to be without merit. The judgment of the District Court is affirmed.