Joseph W. HART, Luella F. Hart and J. Carl Russell,

v.

FEDERAL RESERVE BANK OF ATLANTA.

Civ. No. 3337.

United States District Court
M. D. Tennessee,
Nashville Division.

Jan. 13, 1966.

Fyke Farmer, Nashville, Tenn., for plaintiffs.

James F. Neal, U. S. Atty., Nashville, Tenn., for defendant.

## MEMORANDUM

### WILLIAM E. MILLER, Chief Judge.

This case is before the Court on a motion for summary judgment by defendant, Federal Reserve Bank of Atlanta. The specific points raised and pleaded in the motion are that (1) plaintiff, Luella F. Hart, is not a proper party plaintiff; (2) the questions now presented have been previously decided and that this action is therefore barred under the doctrine of res judicata; (3) the action is barred by laches and the statute of limitations; and (4) the action will not lie because of the doctrine of sovereign immunity.

In 1943, in order to finance a development known as Country Club Village Subdivision, Country Club Village Corporation executed a promissory note to the First National Bank of Birmingham for $2,200,000. Plaintiffs, Hart and Russell, the principal stockholders of the Corporation, signed the note as guarantors. Plaintiffs executed an agreement dated April 6, 1944, which required them to deposit the capital stock of the Corporation. In addition, the Corporation executed and pledged an additional note for $2,200,000 payable on demand, this note being secured by real estate and chattel mortgages covering all its properties. Pursuant to these financial arrangements, Country Club Village Corporation completed construction of the development.

Plaintiffs allege that the two banks, using the power of the pledge, forced them to sign the agreement of April 6, 1944. They further allege that they were induced to sign the agreement by representations that if they did sign and did turn over the stock of the Village Corporation, they would not have to honor their guaranty of the Village Corporation's indebtedness.

The 1944 Agreement provided that stock of the Country Club Village Corporation would be conveyed to the banks, who would hold it free and clear of all claims of Hart, his wife, Mrs. Luella Hart, and Russell. Qualifying shares were given to Hart and Russell who were to act as managers of the Country Club Village Corporation. It was further provided that although the liabilities of the Country Club Village Corporation exceeded its assets, Hart and Russell were to have the right to redeem the stock by payment of the indebtedness within one year. At the same time, the banks were given the power to accept an offer to buy the Corporation. In accepting any offer within the one year period, however, it was provided that the banks were to exercise their best judgment and discretion. Furthermore, before accepting any offer, the banks were to submit written notice to Hart and Russell. The power to

sell, i. e., accept an offer, was limited to one year from the date of the Agreement at which time Hart and Russell were to have no further rights in the stock of the Country Club Village Corporation or any successor corporation.

Subsequent to the 1944 Agreement, the banks organized the Country Club Realty Corporation by issuing the capital stock of that corporation, except for qualifying shares for Hart and Russell, to the Country Club Village Corporation. The Village Corporation then transferred its property to the Realty Corporation and the banks released the real and chattel mortgages which they held as collateral against the Village Corporation's indebtedness. The banks then obtained from the Realty Corporation an agreement to execute new mortgages on demand subject only to F.H.A. insured first mortgages to be placed on the individual homes.

F.H.A. mortgages, totalling over $2,-000,000, were placed on the homes and the net proceeds were received by the banks and applied to the Village Corporation's indebtedness. A deficit of $183,-345.55 remained. The banks demanded payment for 90% of this deficit, and the Federal Reserve Bank of Atlanta, fiscal agent of the United States, made the payment pursuant to its guaranty agreement made sometime in October, 1944.

Plaintiffs then allege that in the course of the year following the agreement of April 6, 1944, the defendant prevented any sales of homes within the Subdivision. It is further asserted that the banks refused several offers for the Subdivision as a whole. At the expiration of the one year period specified in the April 6, 1944 Agreement the defendant and the two banks sold the Subdivision to Ellinor for $37,140.00. The Subdivision was then conveyed by the Realty Corporation to Spring Hill Homes, Inc., the corporation designated by Ellinor to take title to the Subdivision. The banks then assigned the principal note to the defendant, Federal Reserve Bank, together with the capital stock of the Village Corporation and all interests in collateral.

Subsequently, on or about December 22, 1945, the defendant, pursuant to an agreement made before the sale, released the Realty Corporation of its obligation to execute a mortgage covering the Subdivision as provided by the agreement dated January 16, 1945, a mortgage which was to have secured the balance of the Village Corporation's indebtedness. Then, on September 9, 1946, the defendant assigned the $2,200,000 note executed by the Village Corporation and secured by the capital stock of both the Village Corporation and the Realty Corporation to the United States.

A suit was then instituted by the United States against Hart and Russell as guarantors for the $2,200,000 note, resulting in a judgment against Hart and Russell for $119,850.56, of which $83,-900.63 constituted the balance of the principal on the note. United States v. Hart et al., 215 F.Supp. 35 (M.D.Tenn. 1962), affirmed 312 F.2d 127 (6th Cir. 1963).

■ While the claims and causes of action in this and the prior action are different, the Court is nevertheless of the opinion that the plaintiffs' action is barred by collateral estoppel, which is an aspect of the doctrine of res judicata. This doctrine operates to preclude relitigation between the same parties [1] of issues which were actually adjudicated and determined in a prior action, even though the causes of actions in the two suits are not the same. This distinction is clearly brought out in the discussion

---

1. Here the parties are the same since the Federal Reserve Bank was acting merely as the fiscal agent of the United States. Mrs. Hart's presence in this action may be disregarded since it is shown that she had no interest in the Country Club Village Corporation except as the holder of one share of stock to qualify her as a member of its board of directors. Even this share was surrendered under the agreement of April 6, 1944.

of res judicata in 1B Moore's Fed.Practice, Sec. 0.405, p. 621:

The term res judicata is often used to denote two things in respect to the effect of a valid, final judgment: (1) that such a judgment, when rendered on the merits, is an absolute bar to a subsequent action, between the same parties or those in privity with them, upon the same claim or demand; and (2) that such a judgment constitutes an estoppel, between the same parties or those in privity with them, as to matters that were necessarily litigated and determined although the claim or demand in the subsequent action is different. Under the first proposition the judgment operates as a bar—prevents relitigation of all grounds for, or defenses to, recovery that were then available to the parties before the particular court rendering the judgment, in relation to the same claim—regardless of whether all grounds for recovery or defenses were judicially determined. Under the second proposition the judgment prevents the parties from relitigating only those matters that were determined.

While both propositions have the same general objective—judicial finality, the operational difference between them is at times crucial. For clarity we shall use the term res judicata as embracing only the first proposition, and the term collateral estoppel as embracing the second proposition. "The basic distinction," said Chief Justice Warren in Lawlor v. National Screen Service Corp. [349 U.S. 322, 75 S.Ct. 865, 99 L.Ed. 1122],

"between the doctrines of res judicata and collateral estoppel, as those terms are used in this case, has frequently been emphasized. Thus, under the doctrine of res judicata, a judgment 'on the merits' in a prior suit involving the same parties or their privies bars a second suit based on the same cause of action. Under the doctrine of collateral estoppel, on the other hand, such a judgment precludes relitigation of issues actually litigated and determined in the prior suit, regardless of whether it was based on the same cause of action as the second suit."

An analysis of the complaint in the present case discloses that the plaintiffs seek to recover from the Federal Reserve Bank an amount representing the difference between the value of the Country Club Village Corporation stock and the amount realized from the sale of the subdivision real estate upon the general theory that the Federal Reserve Bank, acting as fiscal agent for the United States, mismanaged the collateral security and by its conduct caused such security to be sacrificed to the plaintiffs' prejudice. Specifically, it is alleged:

(1) That the Federal Reserve Bank participated in the sale to Ellinor or Spring Hill Homes, Inc., of the subdivision property at a "wanton sacrifice."

(2) That the plaintiffs were induced by representations and assurances made by the banks and by the Federal Reserve Bank that the plaintiffs would never be called upon to make good their guaranty and endorsements to enter into and sign the agreement of April 6, 1944.

(3) That no notice was given to the plaintiffs at the time of the sale of said property to Ellinor or to Spring Hill Homes, Inc., as required by the agreement of April 6, 1944, and by the provisions of the Alabama statute.

(4) That the agreement of April 6, 1944, authorizing transfer of the Country Club Village Corporation stock to the banks was contrary to the provisions of Alabama law and therefore void.

(5) That the Federal Reserve Bank by the agreement of December 22, 1945, wrongfully released the obligation of the Country Club Realty Corporation to execute a mortgage on the property.

(6) That the Federal Reserve Bank during the one year period specified and provided for in the agreement of April 6, 1944, "prevented any sales of the individual houses from being made to home owners."

■ It is clear that the question as to whether the property was sold at a sacrifice was actually adjudicated adversely to the plaintiffs in the prior litigation.[2] It was specifically found both by this Court and the Court of Appeals that the price, $37,140.00, was fair and adequate and that the sale was made in good faith. Consequently, this issue cannot be re-examined in the present case as the basis for a claim by the plaintiffs against the Federal Reserve Bank, acting merely in the capacity of a fiscal agent for the United States.

It is equally clear that the Court determined in the prior litigation that the agreement of April 6, 1944, was made and entered into by the plaintiffs freely and voluntarily and that its execution was not induced by the alleged representations or assurances of other parties. This issue is also precluded by collateral estoppel.

The notice question under the agreement of April 6, 1944, was also litigated in the prior action, although the applicability of the Alabama statute requiring that notice be given to stockholders before the sale of all corporate assets was not specifically discussed at the trial stage of the proceeding, or in the opinion of the Court of Appeals. The Alabama statute, however, was cited and relied upon in the Court of Appeals by the appellants, the Government taking the position that the Alabama statute was without application because federal law rather than state law controlled. The Court of Appeals found that the only issue deserving of discussion was the question of the value of the property sold, with the result that it indulged in no discussion of the notice issue or the applicability of the notice requirement of the Alabama statute. It is apparent, however, that the question of notice was actually raised and that it was adjudicated adversely to the plaintiffs, since the Court of Appeals expressly found that "other questions raised by appellants are

considered to be without merit." 312 F.2d 130. In addition, it should be added that the plaintiffs' contention is in any event without merit. The sale was not made until the expiration of the one year period provided for in the agreement of April 6, 1944, and consequently, under the terms of the agreement, no notice was required to be given to the plaintiffs. As to statutory notice to stockholders in the case of a corporation selling all of its assets, the plaintiffs at the time of the sale were no longer stockholders of Country Club Village Corporation, their rights of ownership having been divested by the agreement of April 6, 1944, and transferred to the Banks. Hence they were not entitled to receive notice of the sale of corporate assets.

The contention was made in the prior action that the agreement of April 6, 1944, was void under Alabama law because it provided for a one year redemption period rather than a period of two years. This issue was also determined and adjudicated adversely to the present plaintiffs since their defenses were disallowed and the Court of Appeals, as pointed out, found all contentions of Hart and Russell in opposition to the Government's claim "to be without merit."

That the Federal Reserve Bank may have executed a release of the obligations of the Country Club Realty Corporation to execute a mortgage on the property was specifically determined to be immaterial in the prior litigation, this Court pointing out that the property had already been contracted to be sold for $37,-140 and that the release of the obligation was necessary to pass a good title to the purchaser, Spring Hill Homes, Inc. United States v. Hart et al., 215 F.Supp. 35, 36.

■ The allegation that the Federal Reserve Bank prevented sales to individual home owners during the one year

---

2. United States v. Hart, Civil Action No. 2299, M.D. of Tenn., Findings of Fact and Conclusions of Law; Supplemental

Memorandum, 215 F.Supp. 35; Opinion Court of Appeals, 312 F.2d 127.

period provided for in the agreement of April 6, 1944, because of its vagueness and generality, is insufficient to state a claim against the Federal Reserve Bank which would not be precluded under the doctrine of sovereign immunity. Since the Reserve Bank was merely a fiscal agent of the War Department under the First War Powers Act of 1941, it would be clothed with the immunity of the sovereign in carrying out its proper functions in complying with its statutory obligation as an insurer of 90% of the Hart and Russell indebtedness, and in receiving and enforcing all rights to collateral security after payment. During the one year period under the agreement of April 6, 1944, the indebtedness was in default, and except for the one year moratorium so provided, the property could have been sold immediately. It is clear from the agreement that a broad discretion is vested in the banks (assignors of Federal Reserve) with reference to enforcement of collateral and as to questions of sale and foreclosure, and the allegation that Federal Reserve during this period prevented sales to individual home owners, standing alone, and in the context of the facts as they existed, amounts to nothing more than a decision made by the Bank, in the proper exercise of its discretion, not to continue after default in liquidating collateral to sell lots separately but to sell all of the remaining real estate as a whole. If the allegation was intended to infer that full value was not realized from the real estate, the issue was settled against plaintiffs by the direct finding to the contrary in the former suit.

An order will accordingly be submitted to the Court allowing the plaintiffs to amend their complaint as set forth in motion filed August 24, 1965, otherwise disallowing said motion, sustaining the defendant's motion for summary judgment and dismissing the plaintiffs' action, taxing the costs to the plaintiffs, and reciting that the disposition of the action upon summary judgment is based upon the pleadings and exhibits in this action and upon the entire record in the case of United States v. Hart, Civil Action No. 2299, in the Nashville Division of this court, of which the Court takes judicial notice.