995 F.2d 1066
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Gaylen FANN, Gene Taylor, Gaylen Fann Enterprises, Inc.,
George B. Butler and wife, Leah Bea Butler,
Plaintiffs-Appellants,
v.
BUICK MOTOR COMPANY, A DIVISION OF GENERAL MOTORS
CORPORATION, Defendant-Appellee.
 No. 92-5351.
 United States Court of Appeals, Sixth Circuit.
 June 11, 1993.
 
 Before: NELSON and BATCHELDER, Circuit Judges, and BECKWITH, District Judge.[1]
 PER CURIAM.
 
 
 1
 This rather unusual civil rights case arises out of the recovery by General Motors Corporation's Buick Division of certain test cars that were found to have been stolen from it by a GM employee. The plaintiffs, into whose possession one or more of the vehicles came subsequent to the theft, claim that GM violated their rights under the United States Constitution and the law of Tennessee. A Tennessee court having determined in another lawsuit that the vehicles were in fact stolen, which meant that GM retained title regardless of subsequent purchases by people without notice of the theft, the district court granted summary judgment to the defendant. For the reasons stated below, we shall affirm the district court's judgment.
 
 
 2
 * Plaintiffs Gaylen Fann and Gaylen Fann Enterprises, Inc., are Tennessee dealers in new, used, and reconstructed automobiles. Acting as a partner of Mr. Fann and his corporation, plaintiff Gene Taylor purchased a number of Buick test cars from a salvage yard in Michigan. The cars were shipped to Tennessee, where plaintiffs George and Leah Butler were among the ultimate purchasers of the vehicles.
 
 
 3
 As explained in Butler v. Buick Motor Co., 813 S.W.2d 454 (Tenn.App.), cert. denied, 112 S.Ct. 307 (1991), the car purchased by the Butlers was a prototype of a 1985 model. Built by GM in August of 1983, the prototype was driven on public highways by GM employees until February of 1985; it was then taken to a GM proving ground for durability testing. The car's vehicle identification number was removed and GM's certificate of title was surrendered. GM planned to destroy the car at the conclusion of the testing process.
 
 
 4
 Acting without GM's knowledge and authority, as the Tennessee court concluded, a GM employee named Clingingsmith falsified the paperwork on this car and others and sold them to an employee of a used car lot. That individual transferred the cars to the operator of a Michigan salvage yard, from whom they were purchased by the dealers from Tennessee.
 
 
 5
 The car that the Butlers subsequently bought from the dealers came with a "certificate to dismantle." In August of 1985 the Butlers applied to the Tennessee Department of Revenue for a "reconstructed title," submitting the certificate to dismantle as proof of ownership. Other purchasers did the same thing, apparently, and in the fall of 1985 the Tennessee authorities were prompted to commence an investigation. This led ultimately to discovery of a conspiracy between the GM employee (Mr. Clingingsmith), the used car lot employee, and the operator of the salvage yard.[2] The three men were convicted on federal charges of conspiracy to traffic in cars without vehicle identification numbers, and as part of their sentences they were ordered to make restitution to the purchasers of the cars.
 
 
 6
 The Tennessee dealers appear to have cooperated fully in a rather protracted investigation that was conducted by GM, and an affidavit given by plaintiff Taylor says that GM "confirmed" to him that if it proved necessary to take any of the cars back, GM would do so through the dealers. An affidavit given by plaintiff Fann, similarly, says that he understood that Mr. Taylor "aided [security officials from Buick] in finding whatever information they needed and I did not worry about contacting any customers at that time for [Taylor] advised me that Buick officials had assured that if they should need to remove any of those vehicles from the roadways they would go through us to acquire them."
 
 
 7
 GM did not, as it turned out, go through the dealers in recovering the stolen cars. It reported several of the vehicles (including the one purchased by the Butlers) to the Michigan State Police as having been stolen, and the same information was presumably communicated to the Tennessee Department of Safety. The car purchased by the Butlers was impounded by the Tennessee Department of Safety, along with seven other stolen vehicles, in June of 1986. The Department of Safety promptly delivered the vehicles to GM, which transported them back to Michigan on the same day.
 
 
 8
 Mr. and Mrs. Butler sought recovery of the car in a replevin action brought in the Chancery Court of Coffee County, Tennessee. The replevin case went to trial, and judgment was entered in favor of the Butlers; the judgment was reversed on appeal, however, in the decision cited above. The Tennessee Court of Appeals concluded that inasmuch as Mr. Clingingsmith had not been shown to have had any authority to sell GM property, his actions constituted theft; that GM remained the true owner at all times; and that the Butlers acquired no legal or equitable interest that could prevail over the rights of GM. Butler, 813 S.W.2d at 458.
 
 
 9
 The replevin action was filed in 1986. Two further lawsuits--one brought on behalf of the Butlers and the other on behalf of the Tennessee dealers--were filed in 1987 by the same lawyer who represented the Butlers in the replevin action. The new lawsuits--which sought compensatory and punitive damages against GM and the State of Tennessee on federal constitutional grounds, among other things--were removed to federal district court and consolidated in the proceeding that is before us now. The claim against the State of Tennessee was dismissed, and the propriety of that dismissal is not being challenged here.
 
 
 10
 In 1989, after the entry of judgment for the Butlers in the replevin action, the district court (Jarvis, J.) stayed the present proceeding pending resolution of the state court appeal. In 1991, after the appeal was decided in favor of GM and after the denial of further review by the Supreme Court of Tennessee, the district court granted summary judgment to GM. A motion to alter, amend or set aside the summary judgment was denied in 1992, and this appeal followed.
 
 II
 
 11
 Under Tenn.Code Ann. § 55-5-108(b)(1), any automobile from which the vehicle identification number has been removed is declared to be contraband and subject to forfeiture to the state. When Tennessee law enforcement officers have reason to believe that property constitutes contraband under this section, the statute says that it is their duty to impound the property on behalf of the Department of Safety. The statute goes on to provide in subsection 108(b)(4) that any claimant to such property shall have a right to an administrative hearing before the Commissioner of Revenue or his designee upon the filing of a written request within 10 days of receipt of notice of the impoundment. "[U]pon a hearing when the matter is contested," Tenn.Code Ann. § 55-5-108(b)(5) provides, "the commissioner of revenue or his designee ... shall determine the rights, title or interests of all claimants to the property."
 
 
 12
 It may be open to question whether the Commissioner of Revenue is obligated to follow this procedure where the state does not propose that an automobile it has impounded be forfeited to the state. In any event, it is clear that the Commissioner of Revenue did not conduct an administrative hearing with respect to any of the automobiles involved in this case. The plaintiffs contend that the failure to conduct such a hearing violated their rights under the Due Process Clause of the Fourteenth Amendment of the United States Constitution.
 
 
 13
 The short answer to the plaintiffs' contention is that GM is not answerable to the plaintiffs for the alleged violation of their constitutional rights because GM is not the State of Tennessee and was not acting for the state when it took back its automobiles from the state officials. The language on which the plaintiffs' federal constitutional claim turns is this:
 
 
 14
 "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of live, liberty, or property, without due process of law...." U.S. Const., Amend. XIV, Sec. 1 (emphasis supplied).
 
 
 15
 By its express terms, the Due Process Clause of the Fourteenth Amendment restricts only governmental action. The Supreme Court has recognized this obvious fact for well over a century. See, e.g., The Civil Rights Cases, 109 U.S. 3 (1883), and cf. NCAA v. Tarkanian, 488 U.S. 179 (1988). Charles Wilson, a former Chief Executive Officer of GM who served as a member of President Eisenhower's cabinet, once evoked a good deal of critical comment by remarking that what is good for General Motors is good for the country, and vice versa--but not even Mr. Wilson would have supposed that GM and the state were one. The plaintiffs have cited no case that comes close to suggesting that GM's action in receiving its cars back was state action.
 
 
 16
 A second answer to the plaintiffs' constitutional claim is that the Due Process Clause has no application except where a person is deprived of "life, liberty, or property." We are not talking of life or liberty here, and Butler has now established that the plaintiffs had no property interest in the stolen cars.
 
 
 17
 Under Tennessee law, as Judge Jarvis noted, "[t]he doctrine of 'collateral estoppel', which is an aspect of the doctrine of res judicata, operates to preclude relitigation between the same parties of issues which were actually adjudicated and determined in a prior action even though the causes of actions in the two suits are not the same. Hart v. Federal Reserve Bank, 270 F.Supp. 296 (M.D.Tenn.1966), aff'd., 379 F.2d 961 (6th Cir.1967), cert. denied, 390 U.S. 924 (1968)." Res judicata principles are applied in Tennessee to parties "and their privies." See In re Adoption of Johnson, 678 S.W.2d 65, 67 (Tenn.Ct.App.1984). On the facts presented here we think that Tennessee law would preclude the Butlers from relitigating the ownership question because they were parties to the state court replevin action, and the law would preclude the dealers from relitigating the ownership question because they were privies of the Butlers. Federal courts, of course, must give state court judgments the same preclusive effect that the state courts would give them. 28 U.S.C. § 1738; Barnes v. McDowell, 848 F.2d 725, 730 (6th Cir.1988), cert. denied, 488 U.S. 1007 (1989).
 
 
 18
 Even if the dealers were not privies of the Butlers--and Judge Jarvis' ruling on the plaintiffs' motion to alter or amend seems to suggest that he thought they were not--the dealers could not prevail on the property issue without persuading us that Butler was wrongly decided and should be accorded no precedential effect. This they have failed to do. It is clear to us, as it was clear to the Tennessee Court of Appeals, that the automobiles involved in this case were stolen from GM. A subsequent purchaser of stolen property, no matter how innocent, does not acquire title to the property. Butler, 813 S.W.2d at 458; Insurance Co. of North America v. Cliff Petit Motors, Inc., 513 S.W.2d 785, 787 (Tenn.1974); Parham v. Riley, 44 Tenn. 5, 9 (1867).[3] Tennessee's Constitution, moreover, gives a person no due process right to stolen property even if the person is an innocent purchaser. Myers v. City of Alcoa, 752 F.2d 196, 200 (6th Cir.), cert. denied, 470 U.S. 901 (1985).
 
 
 19
 A third answer to the plaintiffs' federal constitutional claim is that even if the plaintiffs had a property interest in the stolen cars, and even if Tenn.Code Ann. § 55-5-108 entitled the plaintiffs to an administrative hearing before the Commissioner of Revenue, and even if GM were somehow responsible as a state actor for short-circuiting the administrative hearing, the federal constitution would still not have been violated as long as redress remained available in the state courts. A violation of a state's procedural requirements cannot invariably be equated with a violation of the Due Process Clause. Inmates of Orient Correctional Institute v. Ohio State Adult Parole Authority, 929 F.2d 233, 237 (6th Cir.1991). Here the state courts remained open to the plaintiffs for adjudication of their right to possession of the cars, for adjudication of their claim of ownership, and for adjudication of their right to damages. The denial of a hearing before the tax collector was not a violation of due process as long as the plaintiffs could get a hearing before a court of law.
 
 
 20
 The only remaining issue that need be addressed is whether the district court, exercising pendent jurisdiction, ought to have allowed the plaintiff dealers to go to trial on the claim that GM violated a contractual obligation to utilize the good offices of the dealers in taking back its cars. We are not prepared to reverse the summary judgment on this ground. The dealers' complaint, as we read it, does not set forth a breach of contract claim.
 
 
 21
 AFFIRMED.
 
 
 
 [1]
 The Honorable Sandra S. Beckwith, United States District Judge for the Southern District of Ohio, sitting by designation
 
 
 [2]
 The Butlers and other purchasers obtained Tennessee certificates of title before the investigation was completed, but the Tennessee court did not find that GM was divested of title when Tennessee issued certificates of title to others
 
 
 [3]
 We need not consider whether this principle was modified by Chap. 965 of the 1988 Public Acts of Tennessee, cited in the Compiler's Notes on Tenn.Code Ann. § 55-5-108. That act did not become law until May of 1988, and it expired on June 30, 1988. The statute codified at Tenn.Code Ann. § 55-5-108 clearly did not turn stolen cars into negotiable instruments