The **UNITED TELEPHONE COMPANY OF PENNSYLVANIA**, a corporation

v.

**FEDERAL COMMUNICATIONS COMMISSION.**

Civ. No. 74–96.

United States District Court,
M. D. Pennsylvania.

Feb. 19, 1974.

Metzger, Hafer, Keefer Thomas & Wood, Harrisburg, Pa., Anderson, Russell & Kill, New York City, Joseph E. Gallagher, Scranton, Pa., for plaintiff.

Michael McDowell, Asst. U. S. Atty., Lewisburg, Pa., Gregory M. Christopher, Fed. Communications Comm., Washington, D. C., Arthur Berman, Harrisburg, Pa., Lewis A. Rivlin, Washington, D. C., for defendant.

## MEMORANDUM AND ORDER

NEALON, District Judge.

Before the Court is a motion for a preliminary injunction filed by plaintiff, The United Telephone Company of Pennsylvania (United), to enjoin a hearing scheduled for February 19, 1974, before the Federal Communications Commission (FCC) until (a) an antitrust

case pending in this Court since 1967 is tried by a jury, and (b) the FCC complies with United's request for public documents pursuant to the Freedom of Information Act (5 U.S.C. § 552). A hearing on the motion was held February 11, 1974, but only oral argument was heard as counsel contended that only legal issues were being contested. An accelerated briefing schedule was fixed and final reply briefs were received by the Court on February 16, 1974.

## HISTORY

On March 2, 1967, Radio Hanover, Inc., (Radio Hanover) brought an antitrust action under the Sherman and Clayton Acts against United and other defendants in which all defendants were charged with combining and conspiring to monopolize cable television services in the Borough of Hanover, Pennsylvania. Succinctly stated, the history of that case is as follows: Prior to 1967, Radio Hanover and several other firms sought a franchise from the Borough of Hanover to construct and operate a cable television system. The franchise was ultimately granted to Radio Hanover and Penn-Mar CATV, Inc., a firm specially created for that purpose by several of the other applicants. One of those applicants was United Transmission, Inc., a subsidiary of United Utilities, Inc., which is also the parent of United Telephone, the plaintiff here and a defendant in the antitrust matter. Since one of the restrictions placed by the Borough of Hanover on the grant of the franchise was that no new utility poles could be erected, Radio Hanover sought permission from United to attach its coaxial cable system to United's already existing telephone poles. United refused, offering instead to construct the coaxial cable system and then to rent space on the cable to Radio Hanover for the transmission of its signals. Noting the possible future uses to which coaxial cable may be put, Radio Hanover on March 2, 1967 filed its antitrust complaint in this Court, alleging violations of Section 2 of the Sherman Act, 15 U.S.C. §§ 2, and Sections 4, 12 and 16 of the Clayton Act, 15 U.S.C. §§ 15, 22 and 26 against United, United Utilities, Inc., United Transmission, Inc., Penn-Mar CATV, Inc. and the other firms which had joined in the creation of Penn-Mar, CATV, Inc.

Soon after the filing of the antitrust complaint, United moved to have the antitrust proceedings stayed on the grounds that primary jurisdiction over the matters asserted in the complaint rested with the FCC.[1] By Memorandum and Order of this Court, filed October 2, 1967, United's motion was denied, this Court noting that the FCC at that time had not yet determined whether it would assume jurisdiction over cable attachments. Although United was placed on notice that any further construction of its cable system without a § 214 certificate (47 U.S.C. § 214) would be at its own risk (Memorandum of Oct. 2, 1967, P. 6), United completed its system. In addition, Radio Hanover's motion for a preliminary injunction was denied, Radio Hanover, Inc. v. United Utilities, et al., 273 F.Supp. 709 (M.D.Pa.1967), and motions by plaintiff and defendants to dismiss claims and counterclaims were also denied.

Further, on May 15, 1967, Radio Hanover brought suit against United alone (Civil No. 9994) in which plaintiff sought injunctive relief to prevent defendants from constructing any CATV facilities in the Hanover area until United either secured a certificate of public convenience and necessity as required by 47 U.S.C. § 214 or was exempted from this requirement by the FCC. Plaintiff's motion for summary judgment and defendants' motion to dismiss were denied and the parties were urged to accelerate discovery as the Court was ready to try the case immediately.

The docket sheets reveal very little activity by any of the parties from July,

1. It is interesting to note that it is now the defendants who seek to have the FCC hearing enjoined.

1968 to June 10, 1971, when both cases were called for pretrial conference by the Court. In all fairness, there was reason for this hiatus inasmuch as, in the meantime, the Commission has assumed jurisdiction over Cable Television and the issue of whether United was required to seek a certificate under § 214 was being actively pursued there. The Justice Department was also considering whether an antitrust suit should be commenced by the Government against United, et al., and plaintiff held off in hopeful anticipation that this would occur, but it did not. Mindful of these factors which were transmitted to the Court by counsel, the Court assumed, in light of the joint inactivity, that the matter would be resolved without any further litigation here. However, after phone conversations with counsel revealed that a trial might be necessary, the cases were listed for pretrial conference on June 10, 1971, at which time Radio Hanover agreed to move for a voluntary dismissal in Civil No. 9994 and both parties represented that they would move with dispatch in order to bring the case to trial promptly. Subsequent to this, substantial discovery was undertaken and, more recently, United pressed strenuously for completion of discovery and trial on the merits.

On June 25, 1968, the FCC overruled its prior decision in Capital City Telephone Co., 3 F.C.C. 189 (1936), and decided that Telephone Companies, such as United, required a § 214 certificate for the construction of its system. General Telephone Company of California, 13 F.C.C. 2nd 448 (1968). Pursuant to that decision, United filed a § 214 application with the FCC on November 26, 1969. On January 20, 1970, Radio Hanover filed a petition to reject United's application, alleging that United sought to monopolize cable television in the Borough of Hanover. Meanwhile the proceedings before the Commission continued and, by Memorandum and Order of March 29, 1973, the FCC designated the application matter for a hearing, to determine, among other things:

"Whether United Telephone Company of Pennsylvania, in connection with the provision of cable television service in the Hanover, Pennsylvania, area has engaged in any practices which are: (a) anti-competitive or monopolistic; or (b) contrary to the public interest standards of the Communications Act; or (c) in violation of any rule, decision, or policy of the Federal Communications Commission."

By order of the same date, March 29, 1973, FCC's Administrative Law Judge (ALJ) scheduled the § 214 hearing for June 11, 1973. That hearing was not convened,[2] and by order of the ALJ, released November 12, 1973, the hearing was reset for February 19, 1974.

On May 31, 1973, United sought the identification of documents relating to the detailed "facts" set forth in the designation order of March 29, 1973. United charges that each of its efforts to secure the documents have been rebuffed by the FCC under a general claim of "exemption". In addition, United alleges that the FCC has refused to "identify" any of the documents supposedly exempt from disclosure. Thus, on June 27, 1973, United moved ALJ for an order to compel identification of the documents. That motion was opposed by the two FCC bureaus which were designated as parties in the § 214 hearing, the Common Carrier Bureau and the Cable Television Bureau. United's motion was denied by a memorandum and order of the ALJ, released September 17, 1973. Thereafter, on November 2, 1973, United served a Freedom of Information Act request on the ALJ. By memorandum and order of January 9, 1974, the ALJ again denied United's request. By affidavit hand-carried to this Court on February 16, 1974, United has informed the Court that "By order released February 15, 1974, the

---

2. Hearing dates were also set for March 21, 1973, and October 30, 1973, but were continued. Plaintiff's Exhibit HH.

FCC's Review Board dismissed United's request for the production of Freedom of Information documents *on the ground that the Administrative Law Judge's denial of such documents was not appealable as of right.*" (emphasis in the original)

## FREEDOM OF INFORMATION CLAIM

Under Section 552(a)(3) of the FIA, 5 U.S.C. § 552(a)(3),

"the district court of the United States in the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant. In such a case the court shall determine the matter de novo and the burden is on the agency to sustain its action."

■ At the outset, the FCC contends that Congress, by specifying the remedies available to a complainant under the FIA, meant to preclude this Court from exercising its traditional equitable powers to enjoin an ongoing agency proceeding. Porter v. Warner Holding Co., 328 U.S. 395, 66 S.Ct. 1086, 90 L.Ed. 1332 (1945); United States v. Babcock, 250 U.S. 328, 39 S.Ct. 464, 63 L.Ed. 1011 (1919). Neither case is in point. Rather, I am in accord with the reasoning espoused in Bannercraft Clothing Company v. Renegotiation Board, 155 U.S. App.D.C. 174, 466 F.2d 345 (1972), where the Court, after studying the legislative history behind the FIA, concluded that since the Act was designed to afford litigants, as well as members of the public, access to agency information, stays of ongoing administrative proceedings may be necessary to implement the policy behind the FIA.

■ However that may be, such equitable powers of this Court should not be resorted to except in extraordinary situations.

As Chief Justice Burger, while a Circuit Judge sitting on the Court of Appeals for the District of Columbia stated in Wolf Corporation v. Securities and Exchange Commission, 115 U.S.App.D.C. 75, 317 F.2d 139, 142–143 (1963):

"Judicial power to impose prior restraint is not called an extraordinary remedy without reason. Even as between private parties the ordinary remedy is legal action after injury. Prior restraint is granted only upon a strong showing and is subject to definite and well established limitations. Prior restraint against governmental action, regular on its face and under color of authority, is even more cautiously exerted. Still higher hurdles stand in the way of prior restraint against the processes of a regulatory body exercising quasi-judicial powers which can be judicially reviewed as a matter of right before they become final. In this third category the jurisdiction of the regulatory or administrative body is exercised within the framework of a statutory scheme in which it acts as an arm of Congress; moreover it has established patterns of procedure and acts in a context where courts have long acknowledged a considerable deference to the specialized experience and competence of such a body. To exert judicial power to stop processes of this third category, which can always be judicially reviewed when the story is fully told and recorded, is an extraordinary step in the usual as well as the legally artful sense of that word. One who seeks our employment of such powers must make the strongest kind of showing; his jurisdictional "t's" must be crossed and the factual "i's" dotted."

While it has been stated that one who seeks disclosure of agency information does not have to establish a need for the information in order to invoke the remedies specified in the FIA, Sterling Drug, Inc. v. FTC, 146 U.S.App.D.C. 237, 450 F.2d 698 (1971); it is quite another matter to invoke the power of a district

court in order to intervene in the affairs of a Congressionally-created agency. United, however, asserts that it will be irreparably harmed if it is compelled to proceed before the FCC without the advantage of adequate preparation which full agency disclosure would afford, citing *Bannercraft*, supra. I do not agree. Bannercraft dealt with the unique proceedings conducted by the Renegotiation Board, which involve a series of steps, each calling for de novo review. A party dissatisfied with Board action at one step may advance to the next but only at the risk of incurring increased liability. Since there are no appellate stages, whatever error may have been committed at one step is foreclosed from consideration at subsequent levels. With that in mind, the District of Columbia Court of Appeals affirmed the injunction of further Board proceedings in order to "ensure that the negotiating process will operate as Congress intended it to operate . . ." Bannercraft, supra, at 361.

The Court in Bannercraft, however, recognized that:

"[T]he usual expense and annoyance which accompany vindication of a right through normal channels is not the sort of irreparable injury of which equity generally takes cognizance. *See, e. g.,* Myers v. Bethlehem Shipbuilding Corp., *supra,* 303 U.S. (41) at 51–52, 58 S.Ct. 459. Cf. Douglas v. City of Jeannette, 319 U.S. 157, 163, 63 S.Ct. 877, 87 L.Ed. 1324 (1943). Thus under normal circumstances a party who must undergo an administrative proceeding does not, by that fact alone, suffer sufficient injury to trigger equitable intervention. *See* Virginia Petroleum Jobbers Assn. v. FPC, 104 U.S.App.D.C. 106, 110, 259 F.2d 921, 925 (1958)."

While United's request is couched in terms of an application for temporary relief, intervention by this Court at this time would be tantamount to a review of an agency's interlocutory order. Even if I were to assume that the ALJ was in error when he denied United's request

for disclosure, United, we are certain, will obtain all the relief it desires, either on appeal through the agency itself, or through review by the Courts. Under 47 U.S.C. § 402 and 28 U.S.C. § 2342, this is an adequate legal remedy to redress any error committed by the agency. See, e. g., Sterling Drug, Inc. v. F. C.C., supra. As stated in Sears, Roebuck and Co. v. NLRB, 473 F.2d 91, 93 (D.C.Cir. 1973):

"It may be that Sears will be held entitled to the documents under the Information Act, and it may be that its possession of those documents will be a convenience, indeed a significant help, in its litigating stance. But those considerations are of a different order from the kind of irreparable injury required to interrupt an administrative hearing. Should Sears' claim to the memoranda be upheld on appeal and should it appear that there was significant adverse impact on Sears in the unfair labor practice charge proceedings because it was denied timely disclosure, an appropriate remedy can be fashioned by the Board, or by the Court of Appeals with jurisdiction of the petition for review or enforcement in the event the Board issues an order."

One further point bears mention. United has been on notice since March 29, 1973, that a hearing on its § 214 application was imminent. As of September 17, 1973, it had been denied access to the requested documents. And on January 9, 1974, United's request for disclosure under the FIA, made on November 2, 1973, was refused. In spite of the urgency with which United now presses forward, it waited until February 4, 1974 to file its FIA complaint in this Court. Throughout that entire period, this Court stood ready, as it does now, to grant United's complaint precedence over all other causes pending before this Court, as mandated by 5 U. S.C. 552(a)(3).

Moreover, when placed in proper perspective, United's FIA claim for injunctive relief must be weighed against

the public interest. United was not dragged reluctantly before the FCC and threatened with the loss of an existing right; rather it voluntarily stepped forward in the hope that it would be allowed to serve the public convenience and necessity. While it is true that an adverse determination at this point may, at the worst, require a dismantling of United's coaxial cable system, it must be remembered that United undertook construction of its system after being placed on notice by the FCC that it was proceeding at its own risk. Absent that factor, an adverse decision by the FCC will place United in no worse a position than it would have been had it not applied for a § 214 certificate. On the other hand, given the predictable and as yet unforeseen uses, as well as abuses, to which coaxial cable may be put, the public interest becomes paramount. As far as I am concerned, the FCC, deigned as it is to be a public servant in this matter, should proceed without interruption at this time by this Court on the premise that the FCC's failure to comply with the FIA has denied United the opportunity to adequately prepare its case.

## ENTITLEMENT TO A JURY TRIAL

United's claim that it is threatened with irreparable injury to its Constitutional right of trial by jury because the Commission's finding of fact may be dispositive of factual issues within the province of the jury, either by the application of collateral estoppel or res judicata, is unconvincing. The issue before the Commission is not whether United violated the Sherman and Clayton Acts but rather whether the issuance of a certificate to it will serve the public convenience and necessity. In United States v. R.C.A., 358 U.S. 334, 79 S.Ct. 457, 3 L.Ed.2d 354 (1959), the argument was made that the Commission's public interest findings barred any subsequent antitrust action because of the doctrines of collateral estoppel and res judicata,

but this was rejected by the Court, as follows:

". . . the issue in controversy before the Commission was whether the exchange would serve the public interest, not whether § 1 of the Sherman Act had been violated. Consequently, there could be no estoppel. Res judicata principles are even more inapposite." 358 U.S. at 352.

The Supreme Court also reasoned that "(t)his is not to imply that federal antitrust policy may not be considered in determining whether the 'public interest, convenience, and necessity' will be served by proposed action of a broadcaster, for this Court has held the contrary. National Broadcasting Co. v. United States, 319 U.S. 190, 222–224, 63 S.Ct. 997, 1011–1013, 87 L.Ed. 1344. Moreover, in a given case the Commission might find that antitrust considerations alone would keep the statutory standard from being met, as when the publisher of the sole newspaper in an area applies for a license for the only available radio and television facilities, which, if granted, would give him a monopoly of that area's major media of mass communication. See 98 Cong.Rec. 7399; Mansfield Journal Co. v. Federal Communications Comm., 86 U.S.App.D. C. 102, 107, 109, 180 F.2d 28, 33, 34."

In Mansfield Journal Co., cited by the Court in United States v. R. C. A., supra, the opinion noted:

"The ultimate matter in question was not whether Mansfield was innocent or guilty, but whether qualified or unqualified, and the appellant's conduct was considered only in that regard." 180 F.2d at 35.

United attempts to distinguish these cases by contending that, while the Commission's ultimate determination will not be "whether United has violated the Sherman and Clayton Acts", its "findings of fact" forming the underpinning for such an ultimate determination "could be"[3] binding upon this Court and

---

3. A contention of res judicata is not cognizable by Courts until administrative proceedings are at an end. Coca Cola Co. v. Feder-

al Trade Comm., 475 F.2d 299, 304 (5th Cir. 1973).

thereby deprive United of its right to a jury determination of such factual matters.

It is pure conjecture to attempt to foresee what the Commission's findings of fact will be. Whether they are findings based on the same transactions or whether they are facts essential to the Commission's decision or whether there was a full opportunity to present evidence and to call, examine and cross examine witnesses or whether all factual issues pertinent to the anti-competitive claims were presented and determined or whether the factual findings supporting an anti-competitive determination were similar to those required in a Sherman or Clayton Act adjudication, or whether the factual disputes were clearly relevant to the issues properly before it, are all matters bearing on any attempted subsequent use of the doctrines of res judicata and collateral estoppel. See United States v. Utah Construction Co., 384 U.S. 394, 422, 86 S.Ct. 1545, 16 L. Ed.2d 642 (1966). The uncertain and nebulous nature of these questions support the conclusion that an attempt to enjoin the continuation of the proceedings before the Commission would be unsupportable and unwise.

In sum (a) the question of whether the Commission should grant a certificate of public convenience and necessity to United is different from the issue of Sherman and Clayton Act violations; (b) the Commission's decision may or may not be predicated on factual findings concerning United's alleged anti-competitive and monopolistic activity; and (c) what these factual findings might be and whether they were properly resolved by the Commission requires pure guesswork.

The matter before the Commission has followed a slow course toward hearing on the merits. Hearings have been postponed several times and I am reluctant to interfere, even temporarily, now that this long awaited day has arrived as it may be some time before these important public interest issues are ultimately decided by the Commission. Commission counsel at page 25 of his brief warns that the ". . . hearing, already too long delayed, should not be further impeded, perhaps for years, by United's speculation of threatened injury." This is especially true here where the threatened injury may dissipate with the prompt scheduling of a trial date which this Court intends to do.

■ Accordingly, plaintiff's application for temporary relief under Rule 65(a), Fed.R.Civ.P., seeking to enjoin the FCC from proceeding with the hearing scheduled for February 19, 1974, on United's application for a § 214 certificate is hereby denied.

### ADDENDUM

After this opinion was dictated and typed, the Court was informed by a Clerk of the United States Supreme Court that today the decision of the District of Columbia Court of Appeals was reversed and remanded. However, from the information received, the basis for the reversal does not disturb the findings here as the Supreme Court apparently held that, although the FIA does not limit the traditional equitable powers of a district court, that the petitioner in Bannercraft was required to pursue his administrative remedies under the Renegotiation Act and was precluded from seeking the aid of the Court so as to interfere with ongoing agency proceedings.