**Sam TITLE, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 17850.

United States Court of Appeals Ninth Circuit.

Aug. 20, 1963.

As Modified on Denial of Rehearing Nov. 18, 1963.

Seymour Mandel, Los Angeles, Cal., for appellant.

Francis C. Whelan, U. S. Atty., Donald A. Fareed, Asst. U. S. Atty., Chief of Civil Section; and James R. Dooley, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before BARNES and HAMLIN, Circuit Judges, and FOLEY, District Judge.

HAMLIN, Circuit Judge.

Petitioner, Sam Title, has filed a petition for review with this court requesting that the order of the Immigration and Naturalization Service that he be deported be set aside. We have jurisdiction to review the order of deportation under the provisions of section 106(a) of the Immigration and Nationality Act (8 U.S.C. § 1105a(a)).

Petitioner, a native of Rumania, entered the United States on July 7, 1923. On October 24, 1941, he was naturalized as an American citizen. The order admitting him to citizenship, however, was revoked on July 12, 1955, by the United States District Court for the Southern District of California.[1] Revocation was made under the provisions of section 340 of the Immigration and Nationality Act of 1952, which authorized the revocation and setting aside of orders admitting an individual to citizenship and the cancella-

tion of his certificate of naturalization if—

"such order and certificate of naturalization were procured by concealment of a material fact or by willful misrepresentation."

The ground for revocation in petitioner's case was that at the time of his naturalization he had concealed the fact that "within a period of ten years immediately preceding the filing" of his petition for naturalization he had been a member of an organization which advocated "the overthrow by force or violence of the Government of the United States,"[2] the organization to which he had belonged being the Communist Party of the United States. Petitioner appealed the district court's decision to this court, but his appeal was dismissed for want of prosecution.

An affidavit showing good cause had not been filed by the government prior to the institution of the denaturalization proceedings, as required by 8 U.S.C. § 1451(a). The Supreme Court in decisions rendered subsequent to petitioner's denaturalization held that such an affidavit was a prerequisite to the initiation of denaturalization proceedings.[3] Petitioner, relying upon these decisions, moved the district court on May 26, 1958, to dismiss the denaturalization judgment as void. The district court denied the motion and we affirmed on the ground that although the failure to file an affidavit may have resulted in an erroneous judgment, the judgment was not void and could not be collaterally attacked.[4] We did recognize, however, that had the matter been brought to our attention on direct appeal, we would have reversed the denaturalization judgment.

On June 6, 1960, an Order to Show Cause and Notice of Hearing was

---

1. United States v. Title, 132 F.Supp. 185 (S.D.Cal.1955).

2. Section 305 of the Nationality Act of 1940.

3. United States v. Zucca, 351 U.S. 91, 76 S.Ct. 671, 100 L.Ed. 964 (1956); Matles v. United States, Lucchese v. United States, and Costello v. United States, all reported at 356 U.S. 256, 78 S.Ct. 714, 2 L.Ed.2d 741 (1958).

4. Title v. United States, 263 F.2d 28 (9th Cir., 1959), cert. den. 359 U.S. 989, 79 S.Ct. 1118, 3 L.Ed.2d 978.

issued by the Immigration and Naturalization Service charging that petitioner was subject to deportation pursuant to the provisions of section 241(a) of the Immigration and Nationality Act (8 U.S.C. § 1251(a)), which provides in pertinent part as follows:

> "Sec. 241(a) Any alien in the United States (including an alien crewman) shall, upon the order of the Attorney General, be deported who—
>
> \*   \*   \*   \*   \*   \*
>
> "(6) is or at any time has been, after entry, a member of any of the following classes of aliens:
>
> \*   \*   \*   \*   \*   \*
>
> "(C) Aliens who are members of or affiliated with (i) the Communist Party of the United States; \* \*."

Under these provisions, as interpreted by the Supreme Court subsequent to petitioner's denaturalization, it is not sufficient to prove merely that an alien has been a member of the Communist Party; it must be shown in addition that the alien was aware of the "distinct and active political" nature of the Party and had a "meaningful association" with the Party.[5]

At petitioner's deportation hearing, the government introduced into evidence the following documents from petitioner's denaturalization case as establishing, under the doctrine of collateral estoppel, petitioner's membership in the Communist Party and the nature of that membership: Complaint; Opinion; Findings of Fact and Conclusions of Law; Judgment; and Decision of this court, dated June 6, 1959 (263 F.2d 28). The special inquiry officer who presided at the hearing concluded that the doctrine of collateral estoppel applied and that the findings of the district court in the denaturalization proceedings established that petitioner was a "member" of the Communist Party within the meaning of that term as judicially defined for deportation purposes. On the basis of his conclusion that the doctrine of collateral estoppel applied, the special inquiry officer would not allow petitioner to present evidence at the hearing. Petitioner appealed the decision of the special inquiry officer to the Board of Immigration Appeals. On November 28, 1960, the Board ordered petitioner's appeal dismissed.

The issue we shall consider is whether the order of deportation outstanding against petitioner is based upon "reasonable, substantial, and probative evidence,"[6] as required by section 242(b) of the Immigration and Nationality Act (8 U.S.C. § 1252(b)). Since the only evidence presented at the deportation hearing was adduced under the doctrine of collateral estoppel, the resolution of this issue depends upon whether that doctrine was properly applied and if properly applied, whether the evidence so adduced meets the standards required for deportation.

We do not feel that the doctrine of collateral estoppel[7] should have

---

5. Gastelum-Quinones v. Kennedy, 374 U.S. 469, 83 S.Ct. 1819, 10 L.Ed.2d 1013 (1963); Rowoldt v. Perfetto, 355 U.S. 115, 78 S.Ct. 180, 2 L.Ed.2d 140 (1957); Galvan v. Press, 347 U.S. 522, 74 S.Ct. 737, 98 L.Ed. 911 (1954).

6. We see no need to discuss petitioner's contention that section 241(a) of the Immigration and Nationality Act is unconstitutional. The constitutionality of this section has previously been recognized by both the Supreme Court and this court. (See, e.g., Galvan v. Press, 347 U.S. 522, 74 S.Ct. 737, 98 L.Ed. 911 (1954); Mac-Kay v. McAlexander, 268 F.2d 35 (9th Cir., 1959) cert. den., 362 U.S. 961, 80 S.Ct. 875, 4 L.Ed.2d 876.

7. In Southern Pacific R. Co. v. United States, 168 U.S. 1, 48–49, 18 S.Ct. 18, 27–28, 42 L.Ed. 355 (1897), the Supreme Court explained the doctrine as follows:

   "The general principle announced in numerous cases is that a right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies; and *even if the second suit is for a different cause of action, the right, question or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the*

been applied in this case. Its application had the effect of depriving petitioner of the hearing guaranteed him by section 242 of the Immigration and Nationality Act of 1952 (8 U.S.C. § 1252(b)). Under that statute, "the alien shall have a reasonable opportunity to examine the evidence against him, to present evidence in his own behalf, and to cross-examine witnesses presented by the Government." It is expressly provided in the statute that the "procedure so prescribed shall be the sole and exclusive procedure for determining the deportability of an alien under this section." As a result of his denaturalization in 1955, petitioner became an alien and as such was subject to the deportation laws. To hold, however, that the hearing he received at the time of his denaturalization takes the place of the hearing procedure provided for in section 242 would, we think, clearly thwart the intention of Congress. We recognize that the purpose of the doctrines of res judicata and collateral estoppel is to preclude the relitigation of issues previously determined between the same parties and that the application of the doctrines in many cases will have the practical effect of preventing the party against whom the issue was determined from again presenting evidence on that issue. We merely hold that Congress has evinced its intention that an alien have a right to present evidence at a hearing held for the purpose of determining his deportability.[8]

Further, we think that the application of the doctrine of collateral estoppel would, apart from the provisions of section 242, be unfair in this case. It has been recognized that the doctrine should not be exercised in such a manner as to work an injustice.[9] The Supreme Court has stated the following concerning the procedure to be followed in deportation cases:

"Here the liberty of an individual is at stake. * * * We are dealing here with procedural requirements prescribed for the protection of the alien. Though deportation is not technically a criminal proceeding, it visits a great hardship on the individual and deprives him of the right to stay and live and work in this land of freedom. That deportation is a penalty—at times a most serious one—cannot be doubted. Meticulous care must be exercised lest the procedure by which he is deprived of that liberty not meet the essential standards of fairness."[10]

This language is particularly appropriate in this case. Petitioner has been in this country forty years, is married to a citizen, and according to his counsel has two children who are citizens. The denaturalization proceedings took place over five years before the deportation order was rendered against him. At the denaturalization hearing, petitioner did not elect to take the stand and did not present evidence in his behalf. The district court properly refused to draw any inference from his failure to take the stand; nor did the court draw an inference from petitioner's failure to present evidence. Why he did not choose to present evidence in his denaturalization proceeding is not of concern to us now. What does concern us is that at his deportation proceedings he desired to present evidence and was refused the opportunity to do so. It should be remembered that at the time of his denaturalization proceedings, "meaningful association" had not been announced as the test for deportability by the Supreme Court and had not been defined by that,

---

*judgment in the first suit remains unmodified."*

8. It is also questionable whether a previous court determination can be res judicata (or work as a collateral estoppel) on an issue which Congress has committed to administrative determination. (See

Davis, Administrative Law Treatise, Volume 2, p. 622 (1958 Ed.).)

9. Scott, Collateral Estoppel by Judgment, 56 Harv.L.Rev. 1, 29 (1942).

10. Bridges v. Wixon, 326 U.S. 135, 154, 65 S.Ct. 1443, 1452–1453, 89 L.Ed. 2103 (1945).

Court. Assuming *arguendo* that the doctrine should be applied in deportation proceedings, had petitioner known that the test for deportability was "meaningful association" with the Party and that the facts proved in the denaturalization proceedings would tend to show such an association, he may have proceeded differently.[11]

Since the doctrine of collateral estoppel should not have been applied in this case, we can only conclude that there was not reasonable, substantial or probative evidence to support the order. Accordingly, the order is set aside.

The case is remanded for further hearing before the Immigration and Naturalization Service. At such hearing evidence which in the light of this opinion is not inadmissible may be offered by either party.

11. This case illustrates the difficulty which can arise when determinations made under one statute are considered to be binding when a similar question arises under a different statute. "Because the legislative history of two statutes is always different, because the purposes of two statutes are never the same, and because the context of provisions must be taken into account, the conclusion is probably sound that a determination under one statute need not necessarily be res judicata when the same question arises under identical words of another statute." (Davis, Administrative Law Treatise, Volume 2, p. 578 (1958 Ed.).)