CITY OF CLEVELAND, Plaintiff,

v.

The CLEVELAND ELECTRIC
ILLUMINATING COMPANY,
et al., Defendants.

Civ. A. No. C75–560.

United States District Court,
N. D. Ohio, E. D.

Jan. 15, 1980.

William B. Norris, Hahn, Loeser, Freed-heim, Dean & Wellman, James E. Young, Thomas E. Wagner, Director of Law, City of Cleveland, Cleveland, Ohio, for plaintiff.

John Lansdale, James P. Murphy, Squire, Sanders & Dempsey, Cleveland, Ohio, for defendant.

## MEMORANDUM AND ORDER

KRUPANSKY, District Judge.

Presently before the Court is the City of Cleveland's Motion for an Order in Limine whereby said plaintiff urges the Court to accord conclusive effect in the instant proceeding to certain factual determinations made by the Atomic Safety & Licensing Board of the Nuclear Regulatory Commission ("NRC"), as affirmed by the NRC's Atomic Safety & Licensing Appeal Board, and to bar introduction at trial of any evidence inconsistent with such facts. Ignoring this Court's previous rulings to the contrary, plaintiff currently urges the Court to invoke the doctrine of collateral estoppel in order to preclude herein the relitigation of factual matters resolved in the course of licensing proceedings before the aforementioned subsidiary boards of the NRC. Defendants have responded in opposition to the instant motion.

On three separate occasions, this Court has considered and rejected the contention that the doctrine of collateral estoppel is properly applied to the administrative determinations of the NRC and/or the Federal Power Commission ("FPC"). Thus, by Memorandum and Order issued February 15, 1978, the Court, in denying defendant CEI's Motion for Partial Summary Judgment and for an Order in Limine, expressly declined to apply in the instant proceeding either the doctrine of res judicata or that of collateral estoppel to the administrative determinations of the FPC. A review of this Court's decree discloses that the foregoing resolution was predicated in significant part

upon the fact that administrative proceedings before the NRC and FPC had produced entirely discordant and inconsistent findings. The Court reasoned:

> One final consideration which merits review significantly impacts the Court's decision to reject the doctrine of collateral estoppel. On several prior occasions, allegations of anticompetitive activities of defendant CEI and others have been raised in various proceedings before administrative agencies of the United States, in particular, the Federal Power Commission, the Atomic Energy Commission, and the Nuclear Regulatory Commission (NRC), none of which is possessed of jurisdiction to entertain claims under the Sherman Act and to afford the parties thereto a statutory remedy for violations of the Act. The contention that the opinions of one of those administrative agencies should bear some *res judicata/* collateral estoppel effect upon these proceedings logically argues for the same determination with respect to the opinions of all of those administrative agencies.

> The resolution of the issues presented to the FPC and the NRC has resulted in a spate of indecisive rulings and conflicting opinions. This Court cannot defer a full and fair presentation of the evidence to the discordant and inconsistent findings of the FPC and the NRC. To invoke the doctrine of collateral estoppel by adopting the conflicting administrative decisions and the antithetical findings of fact of the FPC and the NRC would blanket these proceedings with an impenetrable stygian fog of confusion and doubt. This Court shall not become a party to this administrative chaos.

Memorandum and Order, February 15, 1978, at p. 1234.

The pronouncements of the foregoing mandate were subsequently reaffirmed by this Court in its Order of February 17, 1978. There, the Court refused to stay its hand pending completion of the NRC licensing proceedings, writing in material part:

> In support of the proposed continuance, plaintiff asserts the doctrine of primary jurisdiction and further offers the final decision of the NRC, whenever it may issue, as conclusive of the issues joined herein. The requested continuance would be warranted only if this Court were to find the final decision of the NRC relevant to the proceedings before this Court by applying the doctrine of collateral estoppel. However, as previously stated in its order of February 15, 1978, the Court may not invoke the doctrine of collateral estoppel with respect to the rulings of either the Federal Power Commission (FPC) or the NRC.

> As the Court has concluded, the conflicting and inconsistent decisions of the FPC and the NRC shall not provide the rule of order by which these proceedings shall be conducted.

> \* \* \* \* \* \*

> The NRC, and its subsidiary boards, are neither interpreters nor guardians of the antitrust laws of this nation. Although the NRC may have developed a particular expertise in matters involving the nuclear generation of electrical power, this narrow field of experience does not extend to that administrative agency any unique insight into the intricate legal interpretations and applications of the Sherman and Clayton Acts or bespeak an expertise in antitrust law. Section 2135(c) of Title 42, United States Code, does not cloak the NRC with the mantle of judicial wisdom and experience, and statutory authority, through which the United States district and appellate courts have shaped and guided this nation's antitrust law for nearly a century. In accordance with the foregoing conclusions, the Court reiterates its rejection of the doctrine of collateral estoppel and adopts herein its pronouncements of law announced in the Order of February 15, 1978.

Order, February 17, 1978, pp. 1235–1237 (footnotes omitted).

This Court was presented with a third opportunity to assess the propriety of assigning estoppel effect to the foregoing ad-

ministrative determinations by the Motion in Limine of defendant Toledo Edison Company. Consistent with the principles articulated in the aforementioned Orders, this Court once again declined to afford binding effect or otherwise defer to the administrative findings and determinations of the NRC or the FPC. Indeed the Court, by Memorandum and Order issued August 10, 1979, entered an Order in Limine which, in clear and unequivocal language, instructed the litigants thusly:

Accordingly, for the foregoing reasons, during the course of trial, no party shall, in the presence of the jury, allude to, refer to, or attempt to convey, either directly or indirectly, in any manner the findings, conclusions, determinations, or substance of any NRC or FPC administrative determination as such determination reflects upon the defendants' acts alleged herein to be in violation of Sections 1 or 2 of the Sherman Act.

Memorandum and Order, August 10, 1979, at p. 5.

This Court regards its previous mandates of February 15, 1978, February 17, 1978, and August 10, 1979, which are incorporated herein and made a part hereto [see Appendix], as dispositive of the issues joined by the motion at bar. The Court, having carefully reviewed the instant record, is not persuaded that a departure from its prior decrees is currently warranted. Indeed, the Court would observe, as discussed more fully below, that events transpiring subsequent to the issuance of the aforesaid Orders would appear to both confirm the soundness of this Court's previous resolutions and demonstrate further the impropriety, if not the infeasibility, of applying collateral estoppel principles herein to the administrative findings of the NRC.

█ Among the established prerequisites to the application of the collateral estoppel doctrine is the requirement that the determination in the prior proceeding be necessary and essential to the resulting judgment. 1B J. Moore, Federal Practice

¶ 0.443[5] (2d ed. 1974). *See Restatement (Second) of Judgments* § 68, Comment h (tent. draft No. 4, 1977); *Parklane Hosiery Company, Inc. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979). As stated by the Sixth Circuit Court of Appeals in *United States v. School District of Ferndale*, 577 F.2d 1339, 1349 (6th Cir. 1978):

It is basic to the law of collateral estoppel that a finding in one proceeding cannot bind tribunals in subsequent cases unless the finding acted as a basis for final judgment in the first.

In applying this fundamental principle, the Court is constrained to conclude that it is currently impossible to ascertain with any appreciable degree of accuracy and reliability the specific factual determinations which in actuality underlie the decision of the NRC's Atomic Safety & Licensing Appeal Board ("Appeal Board"). The Court would observe initially that precise identification of those findings necessary to the Appeal Board's resolution would appear precluded by the rather irregular manner in which the three member Appeal Panel arrived at and issued its decision of September 6, 1979, and the uncertainties created thereby. A review of said decision[1] discloses that the member of the Appeal Board assigned the responsibility of drafting the panel's opinion, Jerome E. Sharfman ("Sharfman"), resigned from the NRC shortly after completing the opinion but before the same could be fully reviewed by the two remaining members of the panel. To avoid the appearance of impropriety, the remaining members of the Appeal Panel felt obliged to refrain from consulting with Sharfman at any time subsequent to his departure. The ramifications ensuing from this somewhat irregular procedure were described by the nondeparting members of the panel at the very outset of Appeal Board Decision:

Shortly after completing his opinion, however, our colleague resigned from the Appeal Panel to enter private law practice in another city. It was impossible

---

1. The decision of the Appeal Board is before the Court pursuant to the plaintiff's Motion for

Leave to Lodge, filed October 26, 1979, which the Court hereby grants.

for us to complete our own review of Mr. Sharfman's lengthy decision before his departure. And since that time, considerations of avoiding even the appearance of a conflict of interest situation have served to preclude our discussing with him any aspect of this proceeding.

Had Mr. Sharfman remained a member of this Board, or continued to be available for consultation, *we might well have suggested revisions in his treatment of certain issues and have endeavored in other respects to persuade him of the correctness of our views* (particularly on the question of relief) to the extent that they do not coincide with his. Those options have not been open to us. In the circumstances, we file his opinion as it was presented to us (pp. 65*ff., infra.*). We concur in its *ultimate* factual and legal conclusions and the result in it reaches except where indicated in our separate opinion, which follows immediately.

NRC Appeal Board Decision at p. 3, (emphasis supplied). The panelists' lack of unanimity with respect to certain unspecified issues was further reflected in a later passage from the separate opinion of the two remaining Appeal Board members:

The remaining issues raised on appeal meriting extended discussion are covered in Mr. Sharfman's comprehensive and copiously annotated opinion (which begins at p. 65, *infra*). As we mentioned earlier, *had circumstances not intervened we might have suggested revisions in his treatment of certain of them.* Perusal of his opinion persuades us, however, that our former colleague's disposition of *most of the issues* is sound and little would be gained by adding our separate analyses to his lengthy discourse. We therefore join in his *ultimate* factual and legal conclusions except those dealing with relief. We disagree with some of these and we turn to them now.

*Id.* at p. 41 (emphasis supplied).

It is apparent from the foregoing that a numerical majority of the Appeal Board expressly limited their concurrence with Sharfman's lengthy and detailed opinion, wherein a preponderance of the Board's determinations are contained, to the "ultimate factual and legal conclusions" expressed therein. Significantly, the majority specifically disavowed concurrence with an undisclosed number of Sharfman's factual and legal resolutions, advising in fact that, had the opportunity been presented, certain unspecified revisions in the departing member's opinion would have been suggested.

 Given the failure of a majority of the Appeal Panel to embrace without reservation the legal and factual conclusions contained in Sharfman's opinion, or to delineate with some precision the specific determinations found objectionable or acceptable, it cannot reasonably be denied that serious ambiguity exists with respect to the actual findings underlying the Appeal Board's decision.[2] It is equally apparent that collateral estoppel cannot properly obtain where, as here, the underlying decision in the prior proceeding is entirely ambiguous as to the factual findings necessary to support it. *See United States v. School District of Ferndale, supra* at 1349–50. In view of the manifest ambiguities permeating the resolution of the Appeal Board, as described above, the Court is constrained to emphasize once again its unwillingness to "become a party to this administrative chaos."

The Court would observe additionally that identification of those factual determinations necessary and essential to the NRC's decision appears foreclosed at present by the absence of any final agency action. A review of the instant record discloses, for example, that each of the defendants involved in the NRC licensing proceeding have petitioned the full Commission for review of the Appeal Board's decision. In the event the Commission elects to under-

---

**2.** As defendants CEI and Duquesne Light have argued, it is virtually "impossible to know not only what facts were necessary to the decision of the Appeal Board, but, more basically, what

facts the Appeal Board actually found." Joint Memorandum in Opposition to City's Motion in Limine, at pp. 11–12.

take such review, it would appear under the NRC's Rules of Practice, 10 C.F.R. §§ 2.1 *et seq.*, that the Commission is fully authorized to review the Appeal Board's decision with respect to matters of law and policy. 10 C.F.R. § 2.786(b)(4)(i). While the full Commission is not, as plaintiff correctly asserts, empowered to disturb those factual determinations initially resolved by the Atomic Safety & Licensing Board and affirmed thereafter by the Appeal Board, 10 C.F.R. § 2.786(b)(4)(iv), the Commission may, pursuant to its authority to reconsider questions of law and policy, materially alter the Appeal Panel's decision. Should significant modifications in the Appeal Board's resolution ensue as a result of the full Commission's review, any collateral estoppel treatment to be afforded the NRC's subsidiary boards' factual findings would correspondingly be altered by application of the aforementioned principle that only findings necessary to the prior judgment may be given subsequent estoppel effect.

█ In view of the pendency of the aforesaid petitions for further administrative review, the Court at this juncture can only speculate as the substance of the NRC's final decision and the factual determinations which may ultimately prove necessary to that decision. Even assuming then that the more fundamental objections to the invocation of collateral estoppel principles enumerated in this Court's above-cited Orders could be overcome, an assumption, incidentally, this Court regards as entirely without foundation, the Court would nonetheless be constrained under the present circumstances to join and apply herein the prevailing view that administrative findings cannot be afforded estoppel effect absent final agency action. *See Coca-Cola Company v. Federal Trade Commission,* 475 F.2d 299, 304 (5th Cir.), *cert. denied,* 414 U.S. 877, 94 S.Ct. 121, 38 L.Ed.2d 122 (1973); *Continental Can Company, U. S. A. v. Marshall,* 603 F.2d 590, 594-96 (7th Cir. 1979); *United Telephone Company of Pennsylvania v. Federal Communications Commission,* 375 F.Supp. 992, 997 n.3 (M.D.Pa.1974); *cf. Cunegin v. Zayre Department Store,* 437 F.Supp. 100, 103 (E.D.Wis.1977). In addition to its more fundamental shortcomings [3] then, plaintiff's motion would appear to be premature at this time.

---

**3.** A review of this Court's prior Orders discloses that its failure to invoke collateral estoppel principles has been predicated in significant part on the recognition that the statutory mandates of the foregoing administrative forums differ substantially and materially from that of a tribunal presiding over a civil antitrust action. *See Tipler v. E. I. du Pont de Nemours and Co.,* 443 F.2d 125, 128–29 (6th Cir. 1971). It would appear from the recent decision of *In the Matter of Houston Lighting and Power Co.,* (South Texas Project, Units 1 and 2), Docket Nos. 50–498A, 50–499A, (October 9, 1979), that a NRC licensing board is in complete agreement. There, the licensing board refused to be bound by the antitrust findings of a United States District Court, reasoning in pertinent part:

> [C]onsideration must be given to the comparability of the issues involved in the two proceedings when the application of *res judicata* or collateral estoppel is invoked. Issues are not identical if the second action involves the application of a different legal standard, even though the factual setting of both proceedings may be the same. Thus the same historical facts may be involved in two actions, but the legal significance of the facts may differ because different legal standards are applicable to them. . . .

The instant proceeding involves a finding under § 105c(5) whether the activities under the license would create or maintain a situation inconsistent with the specified antitrust laws (42 U.S.C. § 2135(c)). Such an inquiry covers a broad range of activities considerably beyond the scope of the "violation" standard of Section 1 of the Sherman Act. It is well established that in a Section 105c proceeding, it is not necessary to show an actual violation of antitrust laws. . . .

[T]here are substantial differences between the standards and issues involved in the Sherman Act, Section 1 suit based on restraint of trade by concerted action as alleged in the District Court litigation, when contrasted with the issues involved in this proceeding arising from allegations of monopolization (Sherman Act, Section 2), unfair methods of competition (FTC Act, Section 5), and inconsistency with underlying policies of antitrust laws (Section 105c). Where, as here, the legal standards of two statutes are significantly different, the decision of issues under one statute does not give rise to collateral estoppel in the litigation of similar issues under a different statute.

*In the Matter of Houston Lighting and Power Co., supra* at pp. 8–10. (footnotes omitted)

The Court would observe lastly that the Supreme Court's recent decision in *Parklane Hosiery Company, Inc., supra,* lends substantial support to this tribunal's consistent refusal to apply collateral estoppel principles to the foregoing administrative determinations. In *Parklane,* the Supreme Court expressly affirmed the discretion of the trial court to determine when the principles of collateral estoppel should properly obtain. The Court reasoned that "broad discretion" was appropriately conferred upon the district courts in order to safeguard litigants against potentially inequitable applications of the collateral estoppel doctrine. *Id.,* 99 S.Ct. at 651. Of particular significance to the instant controversy, the Court expressly intimated that a defendant would be unjustly burdened by invocation of estoppel principles in the instance where "the judgment relied upon as a basis for the estoppel is itself inconsistent with one or more previous judgments in favor of the defendant." *Id.*

■ This Court has emphasized in its previous Orders the inconsistent and indeed antithetical findings of the FPC and the NRC. *See* in particular Memorandum and Order, February 17, 1978, at pp. 3–4, n.1. In view of these discordant administrative determinations, and in accordance with the equitable considerations of *Parklane, supra, see Starker v. United States,* 602 F.2d 1341, 1348–49 (9th Cir. 1979), the Court can only conclude that the principles of collateral estoppel cannot be extended to either the NRC or the FPC administrative determinations consistent with elementary principles of fairness and justice.

For all the reasons stated hereinabove, the Court finds the plaintiff's Motion for an Order in Limine without merit and properly denied.

IT IS SO ORDERED.

APPENDIX

FEBRUARY 15, 1978

MEMORANDUM AND ORDER

Defendant Cleveland Electric Illuminating Co. (CEI) has filed a Motion for Partial Summary Judgment and for an Order In Limine seeking to bind this Court to a ruling of the Federal Power Commission (FPC), pursuant to the doctrines of *res judicata* and collateral estoppel. Plaintiff responded in opposition and furthermore sought leave to lodge an FPC Opinion with the Court to assist in its determination of defendant's Motion for Partial Summary Judgment. Defendant CEI filed a response thereto asserting that it had no objection to the filing of said FPC Opinion. Accordingly, the Motion for Leave to Lodge FPC Opinion is hereby granted.

The doctrine of *res judicata* is succinctly stated at 46 Am.Jur.2d *Judgments* § 394 at 558–559 (1969):

[T]he doctrine of res judicata is that an existing final judgment rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction, is conclusive of causes of action and facts or issues thereby litigated, as to the parties and their privies, in all other actions in the same or any other judicial tribunal of concurrent jurisdiction. (footnotes omitted).

*See, Cromwell v. County of Sac,* 94 U.S. 351, 24 L.Ed. 195 (1877); *Rogoski v. City of Muskegon,* 550 F.2d 1075 (6th Cir. 1977); *Brachett v. Universal Life Insurance Company,* 519 F.2d 1072, 1073 (5th Cir. 1975); *Pan American Match, Inc. v. Sears, Roebuck and Co.,* 454 F.2d 871 (1st Cir.), *cert. denied,* 409 U.S. 892, 93 S.Ct. 113, 34 L.Ed.2d 149 (1972); *Harrison v. Bloomfield Building Industries, Inc.,* 435 F.2d 1192 (6th Cir. 1970); *Flynn v. State Board of Chiropractic Examiners,* 418 F.2d 668 (9th Cir. 1969); *Saylor v. Lindsley,* 391 F.2d 965 (2d Cir. 1968); *see also, Hart v. Federal Reserve Bank of Atlanta,* 270 F.Supp. 296 (E.D.Tenn.1966), *aff'd,* 379 F.2d 961 (6th Cir. 1967), *cert. denied,* 390 U.S. 924, 88 S.Ct. 849, 19 L.Ed.2d 983 (1968).

The doctrine is, moreover, extended to include within its scope those issues which could have been, but were not, actually raised and decided in the first action. *Rogoski v. City of Muskegon, supra; Brachett*

v. Universal Life Insurance Company, supra; Flynn v. State Board of Chiropractic Examiners, supra; Saylor v. Lindsley, supra.

Collateral estoppel, an offshoot of the doctrine of res judicata, is defined at 1B Moores Federal Practice ¶ 0.441[2] at 3777:

> The essence of collateral estoppel by judgment is that some question or fact in dispute has been judicially and finally determined by a court of competent jurisdiction between the same parties or their privies. Thus the principle of such an estoppel may be stated as follows: Where there is a second action between parties, or their privies, who are bound by a judgment rendered in a prior suit, but the second action involves a different claim, cause, or demand, the judgment in the first suit operates as a collateral estoppel as to, but only as to, those matters or points which were in issue or controverted and upon the determination of which the initial judgment necessarily depended. (footnotes omitted)

Where res judicata requires identity of causes of action, collateral estoppel requires identity of factual issues. Where res judicata renders the earlier final adjudication conclusive of all such subsequent litigation, collateral estoppel renders conclusive only those issues of fact necessarily litigated. Tipler v. E. I. duPont de Nemours and Co., 443 F.2d 125 (6th Cir. 1971).

The doctrine of res judicata and collateral estoppel speak in terms of "judicial determinations by a court of competent jurisdiction." While it is certain beyond peradventure that the Federal Power Commission is not a judicial tribunal of jurisdiction concurrent with a United States District Court, under certain circumstances, the final decisions of administrative agencies may be given a res judicata or collateral estoppel effect. See e.g., United States v. Utah Construction Co., 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966); E. I. duPont de Nemours and Co., supra. The doctrines are nonetheless applied more selectively when an administrative finding is involved. Grose v. Cohen, 406 F.2d 823 (4th Cir. 1969);

United States v. School District of Ferndale, Case No. 75–70958 (E.D.Mich. July 25, 1977). As stated in Grose v. Cohen, supra at 824–825:

> Res judicata of administrative decisions is not encrusted with the rigid finality that characterizes the precept in judicial proceedings. See Farley v. Gardner, 276 F.Supp. 270, 272 (S.D.W.Va.1967). Application of the doctrine often serves a useful purpose in preventing relitigation of issues administratively determined, e.g., Sunshine Anthracite Coal Co. v. Adkins, 310 U.S. 381, 402, 60 S.Ct. 907, [916] 84 L.Ed. 1263 (1940); but practical reasons may exist for refusing to apply it, e.g., United States v. Stone & Downer Co., 274 U.S. 225, 47 S.Ct. 616, 71 L.Ed. 1013 (1927). And in any event, when traditional concepts of res judicata do not work well, they should be relaxed or qualified to prevent injustice. 2 Davis, Administrative Law, § 18.03 (1958).

The Sixth Circuit Court of Appeals has furthermore recognized that

> neither collateral estoppel nor res judicata is rigidly applied. Both rules are qualified or rejected when their application would contravene an overriding public policy or result in manifest injustice. Title v. Immigration and Naturalization Service, 322 F.2d 21 (9th Cir. 1953); Matias Rivera v. Gardner, 286 F.Supp. 305 (D.P.R.1968); Old Dutch Farms, Inc. v. Milk Drivers & Dairy Employees Local Union No. 584, 281 F.Supp. 971 (E.D.N.Y. 1968); 1B Moore's Federal Practice ¶ 0.405[12], at 791; 2 K. Davis, Administrative Law Treatise § 18.02, at 548 (1958).

Tipler v. E. I. duPont de Nemours and Co., supra at 128.

The opinion of the FPC which is at issue here was rendered within the context of a proceeding under Section 202(b) of the Federal Power Act, 16 U.S.C. § 824a, for an order requiring CEI to establish an electrical interconnection with the City of Cleveland. Although alleged anticompetitive practices by CEI were ultimately raised by the City in that proceeding, the underlying

cause of action was not founded upon Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, as is the present controversy. The failure of identity of causes of action precludes resort to the doctrine of *res judicata*. Furthermore, pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15, Congress vested the District Courts with exclusive jurisdiction to adjudicate claimed violations of the antitrust laws, and the doctrine of *res judicata* is particularly inappropriate where the first forum lacks the ability to afford the relief sought in the second forum. *Cream Top Creamery v. Dean Milk Company, Inc.*, 383 F.2d 358 (6th Cir. 1967).

The Court also observes that

absent a special consideration, a determination arising solely under one statute should not automatically be binding when a similar question arises under another statute. *See Title v. Immigration and Naturalization Service*, 322 F.2d 21, 25 n. 11 (9th Cir. 1963); 2 K. Davis, Administrative Law Treatise § 18.04, at 577–78 (1958); *cf. Commissioner of Internal Revenue v. Sunnen*, 333 U.S. 591, 601–602, 68 S.Ct. 715, [721] 92 L.Ed. 898 (1948). This is because the purposes, requirements, perspective and configuration of different statutes ordinarily vary.

*Tipler v. E. I. duPont de Nemours and Co., supra* at 128–129. Admittedly, in ruling upon matters involving the interconnection and coordination of electrical generating facilities the FPC may consider allegations of anticompetitive practices. Nevertheless, the decision of the FPC was premised upon statutory authority wholly different from that which places the issue before this Court. Furthermore, within the context of the FPC proceedings, a determination that defendant CEI had in fact engaged in anticompetitive practices was not an immutable prerequisite to the granting of the requested relief. In consequence thereof, collateral estoppel is equally inappropriate in these antitrust proceedings.

One final consideration which merits review significantly impacts the Court's decision to reject the doctrine of collateral estoppel. On several prior occasions, allega-

tions of anticompetitive activities of defendant CEI and others have been raised in various proceedings before administrative agencies of the United States, in particular, the Federal Power Commission, the Atomic Energy Commission, and the Nuclear Regulatory Commission (NRC), none of which is possessed of jurisdiction to entertain claims under the Sherman Act and to afford the parties thereto a statutory remedy for violations of the Act. The contention that the opinions of one of those administrative agencies should bear some *res judicata*/collateral estoppel effect upon these proceedings logically argues for the same determination with respect to the opinions of all of those administrative agencies.

The resolution of the issues presented to the FPC and the NRC has resulted in a spate of indecisive rulings and conflicting opinions. This Court cannot defer a full and fair presentation of the evidence to the discordant and inconsistent findings of the FPC and the NRC. To invoke the doctrine of collateral estoppel by adopting the conflicting administrative decisions and the antithetical findings of fact of the FPC and the NRC would blanket these proceedings with an impenetrable stygian fog of confusion and doubt. This Court shall not become a party to this administrative chaos.

Accordingly, defendant's Motion for Partial Summary Judgment and for an Order in Limine is hereby denied.

IT IS SO ORDERED.

## FEBRUARY 17, 1978

## ORDER

Before the Court is the February 7, 1977 Motion of Plaintiff to Stay Trial of this Action pending the final disposition of the proceedings before the Nuclear Regulatory Commission. The timing of this Motion, considered within the historical context of these proceedings, necessitates a review of the numerous forestalled attempts to bring this action to trial.

This action was initiated with the filing of a Complaint on July 1, 1975. In view of the significance of the claims and allega-

tions presented therein, the Court, in an effort to accommodate plaintiff's express desire for a speedy disposition, initially assigned a trial date of January 19, 1976. However, upon the urging of plaintiff that additional time was necessary to complete discovery and upon the representation that settlement negotiations were then underway, the Court continued the trial date to March 1, 1976 and set aside the initial days of that proceeding for an evidentiary hearing on the City's Motion to Disqualify counsel for defendant Cleveland Electric Illuminating Company (CEI), the law firm of Squire, Sanders & Dempsey (SS&D). Upon the further assertion of the parties that the aforesaid settlement negotiations might prove fruitful with an additional extension of time, the Court once again continued the trial date and hearing on the Motion to Disqualify to March 15, 1976.

At a March 12, 1976 hearing, the Court was again importuned by the City to continue the trial date in order to accommodate the settlement negotiations of the parties. Once again, the Court acceded to the prayer of the City and continued the scheduled trial date of March 15, 1978. The repeated delays and requests for continuances ultimately placed in doubt the portended success of these settlement negotiations, and when those negotiations terminated in failure, the Court scheduled the disqualification hearing for June 14, 1976 with the trial to follow immediately thereafter. That hearing proceeded on schedule and ultimately resulted in the Court's August 3, 1976 Order denying plaintiff's Motion to Disqualify. Plaintiff's interlocutory appeal of that Order necessitated a stay of further proceedings pending a resolution of the appeal by the Court of Appeals for the Sixth Circuit. The Order of August 3, 1976 was subsequently affirmed by the Court of Appeals on December 12, 1977.

With the disqualification matter resolved by the Court of Appeals, the case is once again in a posture to be tried, albeit more than 2½ years after the City elected to initiate these proceedings. A trial date of March 13, 1978 has been scheduled pending the issuance of the mandate of the Court of Appeals on the disqualification appeal. The City, however, would further delay these proceedings in its endeavor to obtain another continuance of the scheduled trial date to a future indefinite date, ostensibly to accommodate final disposition of proceedings before the Nuclear Regulatory Commission (NRC) (successor to the Atomic Energy Commission) initiated by the petitions of the Toledo Edison Company and The Cleveland Electric Illuminating Company for licenses to operate the Davis-Besse and Perry Nuclear Power Stations. Those proceedings before the NRC, which have continued for the past eight years and admit of no imminent conclusion, shall not serve to further delay the trial of this action.

In support of the proposed continuance, plaintiff asserts the doctrine of primary jurisdiction and further offers the final decision of the NRC, whenever it may issue, as conclusive of the issues joined herein. The requested continuance would be warranted only if this Court were to find the final decision of the NRC relevant to the proceedings before this Court by applying the doctrine of collateral estoppel. However, as previously stated in its Order of February 15, 1978, the Court may not invoke the doctrine of collateral estoppel with respect to the rulings of either the Federal Power Commission (FPC) or the NRC.

As the Court has concluded, the conflicting and inconsistent decisions of the FPC and the NRC shall not provide the rule of order by which these proceedings shall be conducted.[1] Furthermore, the NRC has not commended itself convincingly in proceed-

---

1. On July 12, 1972, the presiding examiner for the FPC entered his decision on the petition of the City of Cleveland for a permanent interconnection with CEI. That decision was later adopted by the FPC on January 11, 1973. At page 16 of the initial decision, the administrative law judge concluded:

Finally, the City's allegations that its difficulties in maintaining service to its customers are due in whole or in part to CEI's anticompetitive practices are not supported by the record in this consolidated proceeding. This record indicates that the City's past inability to furnish reliable, dependable service

ings ancillary to its review of the licensing petitions of CEI and the Toledo Edison Company, (viz. in disqualification proceedings before the Atomic Energy Licensing Board, which were more remarkable for the manner in which they evolved than for the ultimate conclusion reached therein).[2] Notwithstanding this history of administrative discord and indecision, plaintiff urges the

Court to defer to the determinations of the NRC in these matters.

The NRC, and its subsidiary boards, are neither interpreters nor guardians of the antitrust laws of this nation. Although the NRC may have developed a particular expertise in matters involving the nuclear generation of electrical power, this narrow field of experience does not extend to that administrative agency any unique insight

on the MELP system to its own customers has been due primarily to incompetent management and inefficient operations . . .

A contrary conclusion was reached by the Atomic Safety and Licensing Board of the NRC in its initial decision of January 6, 1977 upon review of petitions for licenses to operate the Davis-Besse and Perry Nuclear Power Stations. The confusion raised by the elemental conflict of the decisions of the FPC and the NRC is more surprising in light of the NRC's failure to bind itself to the earlier determinations of the FPC under the doctrine of collateral estoppel. Plaintiff would, nevertheless, have this Court follow in the footsteps of the NRC.

Reviewing the opposing conclusions of the FPC and the NRC, this Court stated, at page 5 of its Order of February 15, 1978:

The resolution of the issues presented to the FPC and the NRC has resulted in a spate of indecisive rulings and conflicting opinions. This Court cannot defer a full and fair presentation of the evidence to the discordant and inconsistent findings of the FPC and the NRC. To invoke the doctrine of collateral estoppel by adopting the conflicting administrative decisions and the antithetical findings of fact of the FPC and NRC would blanket these proceedings with an impenetrable stygian fog of confusion and doubt. This Court shall not become a party to this administrative chaos.

That determination also reflects the Court's position with respect to the instant Motion and is therefore adopted herein.

2. In the proceedings before the Atomic Energy Licensing Board of the NRC, the City of Cleveland filed a motion on November 20, 1975 seeking the disqualification of the law firm of Squire, Sanders & Dempsey (SS&D), counsel for CEI. After an evidentiary hearing, the Board granted the motion on January 20, 1976 and disqualified SS&D from further representation of CEI in proceedings before the NRC. Pursuant to the rules and regulations of the Commission, the matter was thereafter referred to a Special Board for review of the disqualification proceedings. The Special Board issued its opinion on February 24, 1976 therein concluding that SS&D should *not* be disqualified.

The Licensing Board subsequently determined that the opinion of the Special Board was advisory only, and, choosing not to follow that opinion, the Licensing Board again disqualified SS&D.

Undaunted by this double reverse, SS&D pressed an appeal to the Atomic Safety and Licensing Appeal Board. In its decision of June 11, 1976, the Appeal Board concluded that the Licensing Board had proceeded improperly in conducting disqualification proceedings in the first instance and remanded the matter to the Special Board for a formal evidentiary hearing. Shortly thereafter, on August 3, 1976, while the administrative carousel whirled merrily along, this Court, in disqualification proceedings simultaneously conducted in the within action, entered its Order denying the City's Motion to Disqualify SS&D. Decelerating to keep time with the music, the Special Board of the NRC granted, on November 5, 1976, the motion of CEI to dismiss the disqualification proceedings in conformity with the Court's Order of August 3, 1976. The City, however, still out of tempo, appealed the decision of the Special Board to the Appeal Board. On March 1, 1977 the Appeal Board stopped the music altogether by affirming the decision of the Special Board, with the caveat that the chase could begin anew if the Court of Appeals for the Sixth Circuit reversed this Court's Order of August 3, 1976. The Court of Appeals affirmed the August 3, 1976 Order in its opinion dated December 12, 1977, and reaffirmed that position on January 24, 1978.

The matter is now, of course, a closed chapter in the NRC proceedings. In retrospect, however, this circuitous and debilitating administrative imbroglio resembles more a confusing misadventure than it does an orderly and efficient system of administrative justice imbued with sagacity and experience. The NRC disqualification proceedings demonstrated not only a misunderstanding of the substantive legal principles of conflict of interest, but further manifested a fundamental misinterpretation of the procedural rules and regulations by which administrative proceedings are to be conducted.

into the intricate legal interpretations and applications of the Sherman and Clayton Acts or bespeak an expertise in antitrust law.[3] Section 2135(c) of Title 42, United States Code, does not cloak the NRC with the mantle of judicial wisdom and experience, and statutory authority, through which the United States district and appellate courts have shaped and guided this nation's antitrust law for nearly a century. In accordance with the foregoing conclusions, the Court reiterates its rejection of the doctrine of collateral estoppel and adopts herein its pronouncements of law announced in the Order of February 15, 1978.

In passing, the Court pauses to observe that recent public statements present the appearance of a calculated effort on behalf of the City to delay these proceedings, for purposes known only to itself. Early on in these proceedings, the Court admonished the parties to refrain from politicizing the Court's jurisdiction by projecting this tribunal as a forum for political debate or to manipulate or attempt to manipulate the Court's administration for partisan political purposes. Accordingly, through oversight or otherwise, the Court's admonition should not go unheeded and the parties should be ever mindful of the present posture of this case as pending before a United States District Court and meticulously avoid conduct which may be even remotely construed as inconsistent with 18 U.S.C. §§ 401 and 402.

Accordingly, the Motion to Stay Trial is hereby denied and the trial of this action shall proceed as scheduled unless and until any action by the Supreme Court of the United States, or the Court of Appeals for the Sixth Circuit, on plaintiff's proposed petition for certiorari on the disqualification issue warrants a further extension of the trial.

IT IS SO ORDERED.

AUGUST 19, 1979

MEMORANDUM AND ORDER

This matter is now before the Court on the Motion in Limine of Toledo Edison Company (Toledo Edison) and the joint Motion in Limine of Ohio Edison Company and Pennsylvania Power Company (collectively Ohio Edison), whereby said defendants seek preliminary rulings on anticipated evidentiary questions which may arise during trial.

In its Motion, Toledo Edison petitions the Court to foreclose the City from disclosing to the jury either directly or indirectly:

(1) The existence or pendency of proceedings before the Nuclear Regulatory Commission which have or may affect any of the parties to this action, and any opinions or conclusions of the Nuclear Regulatory Commission which have or may hereafter be rendered as a result of the aforementioned proceedings before the Nuclear Regulatory Commission; and

(2) Any alleged activities of the Toledo Edison Company in relation to:

(a) the cities of Bowling Green, Bryan, Napoleon and Waterville;

(b) wheeling or failure to wheel power in Northwestern Ohio;

(c) power supply agreements in Northwestern Ohio;

(d) territorial agreements in Northwestern Ohio;

---

3. The NRC's "Congressionally mandated antitrust review", advanced in plaintiff's motion, is authorized by the recent amendments to the Atomic Energy Act, 42 U.S.C. § 2135(c) (amended December 19, 1970), Pub.L.No.91–560, 84 Stat. 1473, which directs the Commission to "make a finding as to whether the activities under the license would create or maintain a situation inconsistent with the antitrust laws as specified in subsection (a) of this Section." 42 U.S.C. § 2135(c)(5). This finding, which is the sole manifestation of the NRC's authority to review alleged anticompetitive activities of prospective licensees, is de-

pendent in large part upon the advice of the Attorney General regarding the existence of any adverse antitrust aspects of a proposed license. 42 U.S.C. § 2135(c)(5). It may also be observed that the wording of this particular statutory provision is deliberately ambiguous, (e.g. "adverse antitrust aspects", "a situation inconsistent with the antitrust laws"), and affords the NRC no authority to determine the existence of any direct violations of the Sherman and Clayton Acts. That determination rests within the statutory jurisdiction of the United States District Court. 15 U.S.C. §§ 4 and 15.

(e) agreements with the Buckeye Power Company;

(f) refusal to engage in joint ownership of large-scale generating facilities with electric utility companies in Northwestern Ohio;

(g) acquisitions of or mergers with other electric utility companies in Northwestern Ohio;

except insofar as any of the above items may refer or relate directly to plaintiff City of Cleveland, application by any person for membership or unit power purchase participation in CAPCO or discussion by any defendant in relation thereto, or application by any person for ownership in any nuclear facility or portion thereof or discussion by any defendant in relation thereto.[1]

Ohio Edison seeks a similar prohibition against the City to avoid alluding to:

(1) any aspect of any relationship between any . . . defendant [other than CEI] and any municipal electric utility, rural electric cooperative, or association of municipal utilities or rural electric cooperatives located in the geographical area served by said . . . defendant; and

(2) any alleged territorial agreement between any defendant and another investor-owned utility. (footnote omitted)[2]

This is not the first occasion the issues joined by the present Motions have been before the Court. With respect to Nuclear Regulatory Commission (NRC) proceedings in which certain of the present parties appeared, in an Order dated February 17, 1978 the Court denied the City's Motion to stay the trial of this action pending the final disposition of the proceedings before the NRC.[3] In doing so, the Court stated:

The NRC, and its subsidiary boards, are neither interpreters nor guardians of the antitrust laws of this nation. Although the NRC may have developed a particular expertise in matters involving the nuclear generation of electrical power, this narrow field of experience does not extend to that administrative agency any unique insight into the intricate legal interpretations and applications of the Sherman and Clayton Acts or bespeak an expertise in antitrust law. Section 2135(c) of Title 42, United States Code, does not cloak the NRC with the mantle of judicial wisdom and experience, and statutory authority, through which the United States district and appellate courts have shaped and guided this nations antitrust law for nearly a century. Memorandum and Order, February 17, 1978, at 4–5 (footnote omitted).

For substantially similar reasons, the Court rejected CEI's attempt to commit the Court to a ruling of the Federal Power Commission (FPC). See Memorandum and Order, February 15, 1978. The Court of Appeals for the District of Columbia has consistently held that regulatory agencies have neither a duty to administer the antitrust laws nor jurisdiction to determine violations thereof. See Alabama Power Co. v. Federal Power Commission, 511 F.2d 383, 393 (D.C.Cir.1974); Cities of Statesville v. Atomic Energy Commission, 441 F.2d 962, 986–87 (D.C.Cir.1969) (Leventhal, J., concurring); Northern Natural Gas Co. v. Federal Power Commission, 399 F.2d 953, 960 (D.C. Cir.1968). Thus, in Northern Natural Gas Co. v. Federal Power Commission, id. at 960–61, the court, after review of the relationship between antitrust law and the duties of federal regulatory agencies, concluded:

This is not to suggest, however, that regulatory agencies have jurisdiction to determine violations of the antitrust laws. See People of State of California v. F. P. C., supra, 369 U.S. [482] at 490, 82

---

1. Motion in Limine of Toledo Edison.

2. Motion in Limine of Ohio Edison.

3. The City's appeal from the denial of that Motion was dismissed, as a non-final order, by the Sixth Circuit Court of Appeals. City of Cleveland v. Cleveland Electric Illuminating Co., No. 78–3223 (6th Cir. Aug. 4, 1978).

S.Ct. 901 [at 906, 8 L.Ed.2d 54]; *United States v. Radio Corporation of America, supra*, 358 U.S. [334] at 350 n. 18, 79 S.Ct. 457 [at 467 n. 18, 3 L.Ed.2d 354]; *National Broadcasting Co. v. United States*, 319 U.S. 190, 223–224, 63 S.Ct. 997 [1012–1013, 87 L.Ed. 1344] (1943); *Mansfield Journal Co. v. F. C. C.*, 86 U.S.App.D.C. 102, 107, 180 F.2d 28, 33 (1950). Nor are the agencies strictly bound by the dictates of those laws, for they can and do approve actions which violate antitrust policies where other economic, social and political considerations are found to be of overriding importance. In short, the antitrust laws are merely another tool which a regulatory agency employs to a greater or lesser degree to give "understandable content to the broad statutory concept of the 'public interest.'" *F. M. C. v. Aktiebolaget Svenska Amerika Linien, supra*, 390 U.S. [238] at 244, 88 S.Ct. [1005] at 1009 [19 L.Ed.2d 1071]. (footnote omitted)

Contrary to the arguments of the City, the statutory authority and responsibility of the NRC is related solely to prelicensing anticompetitive review and is severely proscribed to considerations of efformation and perpetuation of reasonably probable anticompetitive practices foreseeably arising from future activities under the license. *See* 42 U.S.C. § 2135(c)(5).[4] The NRC is permitted to undertake this finite prospective review under what the Supreme Court has consistently referred to as the "public interest standard" of federal regulatory commissions. *See, for example, Otter Tail Power Co. v. United States*, 410 U.S. 366,

373, 93 S.Ct. 1022, 1027, 35 L.Ed.2d 359 (1973); *California v. Federal Power Commission*, 369 U.S. 482, 484, 82 S.Ct. 901, 903, 8 L.Ed.2d 54 (1962); *United States v. Radio Corporation of America*, 358 U.S. 334, 351, 79 S.Ct. 457, 467, 3 L.Ed.2d 354 (1959). The NRC's refinement of the public interest standard is set forth in 42 U.S.C. § 2135(c)(6) and reads:

> In the event the Commission's finding under paragraph (5) is in the affirmative, the Commission shall also consider, in determining whether the license should be issued or continued, such other factors, including the need for power in the affected area, as the Commission in its judgment deems necessary to protect the public interest.

Addressing the effect of a regulatory agency determination under a substantially similar public interest statute, the Supreme Court held that approval by the Federal Communications Commission (FCC) of an exchange of radio stations would have no estoppel effect on a subsequent antitrust action because "the issue in controversy before the [FCC] was whether the exchange would serve the public interest, not whether § 1 of the Sherman Act had been violated." *United States v. Radio Corporation of America, supra*, 358 U.S. at 352, 79 S.Ct. at 468.

Accordingly, for the foregoing reasons, during the course of trial, no party shall, in the presence of the jury, allude to, refer to, or attempt to convey, either directly or indirectly, in any manner the findings, conclusions, determinations, or substance of any NRC or FPC administrative determina-

---

**4.** The comments of the Joint Committee on Atomic Energy on the 1970 amendment of 42 U.S.C. § 2135 are instructive in this regard.

The concept of certainty of contravention of the antitrust laws or policies clearly underlying these laws is not intended to be implicit in this standard .... It is intended that, in effect, the Commission will conclude whether, in its judgment, it is reasonably probable that the activities under the license would, when the license is issued or thereafter, be inconsistent with any of the antitrust laws or the policies clearly underlying these laws.

\* \* \* \* \* \*

With respect to the above finding, although the words "reasonable probability" do not appear in the standard, the concept of reasonable probability is intended to be a silent partner to the factors in the standard. The standard must be considered in the focus of reasonable probability—not certainty or possibility.

H.R.Rep.No.91–1470, 91st Cong., 2d Sess., *reprinted in* 1970 U.S.Code Cong. & Ad.News 4981, 4994, 5011.

tion as such determination reflects upon the defendants' acts alleged herein to be in violation of Sections 1 or 2 of the Sherman Act. The Court is mindful, however, that occasions may arise during trial when a party deems it necessary to discuss, or to elicit testimony concerning, proceedings before the NRC or the FPC. In those instances, counsel shall request a determination by the Court as to the propriety and necessity thereof, which request shall be made outside the hearing of the jury.[5]

The Court defers ruling upon the objections presented by Ohio Edison's Motion in Limine and the second branch of Toledo Edison's Motion in Limine, both of which are directed to a common issue, i.e., exclusion of evidence concerning alleged territorial agreements with other investor owned utilities and/or evidence of existing practices between the respective companies and municipally owned utilities and electrical cooperatives within their respective service areas to a point during trial when such objections may be considered within the context of all of the evidence developed to that juncture of the proceeding.

Toledo Edison's Motion in Limine is hereby granted in part and denied in part as premature, and Ohio Edison's Motion in Limine is hereby denied as premature.

IT IS SO ORDERED.

---

**5.** This Court's Order of February 6, 1978, which held that depositions taken in the NRC proceeding may be used in the same manner and to the same extent as if they had been taken in this action, presents no insurmountable problems. If counsel for the City finds it necessary to refer to the NRC proceeding in laying a proper foundation for the use of such a deposition, a side bar conference will be appropriate.